AUTOMOBILE DEALER RESOURCES, INC. v. OCCIDENTAL LIFE INSURANCE COMPANY OF NORTH CAROLINA

No. 7210SC518

(Filed 23 August 1972)

**1. Injunctions § 12— temporary injunction — when granted**

A temporary injunction will ordinarily be granted on the merits (1) if there is probable cause for supposing that plaintiff will be able to sustain his primary equity and (2) if there is reasonable apprehension of irreparable loss unless injunctive relief be granted, or if in the court's opinion it appears reasonably necessary to protect plaintiff's rights.

**2. Injunctions § 1— prohibitory injunction**

A prohibitory injunction seeks to preserve the status quo, until the rights of the parties can be determined, by restraining the party enjoined from doing particular acts.

**3. Injunctions § 3— mandatory injunction**

A mandatory injunction is intended to restore a status quo and to that end requires a party to perform a positive act; it is comparable in its nature and function to a writ of mandamus and will ordinarily be granted only where the injury is immediate, pressing, irreparable and clearly established.

**4. Injunctions § 6— enjoining termination of contract — prohibitory injunction**

An injunction restraining defendant from terminating the performance of its duties under a contract with plaintiff is prohibitory where defendant has not ceased the performance of its duties under the contract but has only threatened to do so.

Resources, Inc. v. Insurance Co.

5. **Appeal and Error § 58— temporary injunction — appellate review of the evidence**

In reviewing orders for temporary injunctive relief, an appellate court may look beyond the findings of fact made by the trial court and determine from the evidence whether a preliminary injunction is justified.

6. **Injunctions § 13— preliminary prohibiting injunction — sufficiency of evidence**

There was sufficient evidence of an immediate, pressing and irreparable injury to justify a preliminary injunction prohibiting defendant insurance company from refusing to accept credit insurance business generated by plaintiff pursuant to a contract between the parties, where evidence presented by plaintiff tended to show that its business has been almost completely structured around its contract with defendant, that an interruption by defendant in the performance of its duties under the contract would result in an immediate loss of commissions on 90% of plaintiff's credit insurance business, that this would render plaintiff unable to meet its current expenses, cause a $300,000 note to a bank to become due immediately, and result in plaintiff's insolvency, and that plaintiff's network of agents would disintegrate and plaintiff would likely cease to exist as a going business.

7. **Contracts § 21; Insurance § 2— credit insurance — agency contract — termination by insurance company**

Defendant insurance company was not entitled to terminate unilaterally its contract to accept credit insurance business generated by plaintiff on the ground that plaintiff had failed to respond to defendant's demand that plaintiff reimburse defendant an amount allegedly owed by a company which merged with plaintiff for business closed during 1964 through 1968, where defendant will not be harmed by continuing its business relationship with plaintiff, at least until there can be a legal determination of defendant's claim, and considerable harm could result to plaintiff if it is now put to an election between paying a claim which it questions or immediately suffering disastrous consequences to its business.

8. **Contracts § 21; Insurance § 2— credit insurance — agency contract — termination by insurance company**

The fact that plaintiff has made arrangements to write credit insurance for a company other than defendant in Florida and is making similar arrangements in other states did not justify defendant in breaching its contract to accept credit insurance business generated by plaintiff where the contract did not create an exclusive relationship.

9. **Injunctions § 13; Rules of Civil Procedure § 65— preliminary injunction — specificity of terms**

Terms used by the court in a preliminary injunction restraining defendant from refusing to accept credit insurance business generated by plaintiff pursuant to a contract between the parties were sufficiently specific to meet the requirements of G.S. 1A-1, Rule 65(d),

where the terms appear in such contract, especially when the parties functioned under the contract for more than three years and no showing was made as to any difficulty on the part of either party in understanding the language used.

**10. Injunctions § 13; Rules of Civil Procedure § 65— injunction — conduct enjoined — resort to other documents**

The fact that after a description in a preliminary injunction of each act enjoined, there is added the phrase "pursuant to the contract . . . dated October 1, 1968," or a similar phrase, did not require the enjoined party to resort to documents other than the injunctive order itself to determine what the court was ordering it to do, as such phrases simply show the source of the duty and do not modify in any manner the description of the conduct enjoined. G.S. 1A-1, Rule 65(d).

APPEAL by defendant from *Canaday, Judge,* 1 May 1972 Session of Superior Court held in WAKE County.

Defendant, a North Carolina insurance company, appeals from an order filed 9 May 1972 enjoining it from terminating the performance of its duties under a contract with plaintiff.

Plaintiff is an insurance agency principally engaged in the marketing of credit insurance for defendant under a contract dated 1 October 1968. At the time the contract was entered defendant owned seventy percent of plaintiff's capital stock; the remainder was owned by two individuals. On or about 15 November 1971 defendant sold the stock it owned in plaintiff to one of the individual shareholders. An agreement entered in connection with the stock sale amended the contract of 1 October 1968 by increasing the amount of commissions due plaintiff on sales and providing that plaintiff would place with defendant during each of the next five years credit insurance generating $5,000,000.00 in new premiums, or one-half the total credit insurance produced by plaintiff, whichever was greater.

Under the terms of the 1 October 1968 contract, defendant agreed to maintain licenses in states where its insurance was to be marketed by plaintiff; to license plaintiff's individual agents provided they were of good character and ability and eligible for licensing; to pay commissions due agents under contracts of insurance executed for defendant by plaintiff and approved by defendant; to establish and maintain required reserves and accounts and records necessary for the proper transaction of credit insurance; and to prepare and file all documents, pay all taxes and otherwise perform all functions

required and customary of an insurance company of good reputation and standing. The contract specifies that it is to extend for a period of five years and may be renewed by mutual agreement. It also provides that it may be terminated by mutual consent of the parties expressed in writing.

In a letter dated 24 April 1972, defendant advised plaintiff that effective 1 May 1972 it would be unable to accept new issues of credit insurance generated by plaintiff pursuant to the agreement of 1 October 1968, as amended by the agreement of 15 November 1971.

Plaintiff brought this action 28 April 1972 seeking an order enjoining defendant from terminating the performance of its duties under the contract and requesting a temporary restraining order and a preliminary injunction. A temporary restraining order was entered the day complaint was filed and defendant was ordered to appear on 3 May 1972 to show cause as to why it should not be continued. At a hearing held pursuant to this order, plaintiff offered, in support of its motion for a preliminary injunction, its verified complaint, various exhibits, and an affidavit of one of it officers. This evidence tends to show the following:

In reliance upon its rights under the contract of 1 October 1968, as amended, plaintiff has established a large network of insurance agents throughout southeastern United States. Ninety percent of plaintiff's credit insurance business is placed with the defendant. Plaintiff has no relationship established with any other insurance company which can accept credit insurance business produced by plaintiff. To establish such a relationship would take considerable time since agreements would have to be negotiated and various insurance forms and license applications would have to be approved by insurance departments in the states where plaintiff is engaged in business.

A termination by defendant of its contractual obligations to plaintiff would result in an interruption in plaintiff's ability to place its credit insurance business. Such an interruption would cause plaintiff to lose the confidence and relationship of its agents and would cause an immediate deterioration and loss of plaintiff's agency network. It would also render plaintiff unable to meet its monthly operating expenses or its obligation under a loan agreement under which it borrowed $300,000.00

from North Carolina National Bank for use in the purchase of plaintiff's stock owned by defendant. The bank made the loan and plaintiff and its shareholders agreed to purchase the stock in reliance upon a letter written by defendant's president and dated 15 November 1971. The letter assured plaintiff that defendant would accept credit insurance from plaintiff generating premiums of at least $10,000,000.00 during the year 1972.

Plaintiff contends, through the affidavit of its president, that because of the factors set forth above, a breach by defendant of its contractual obligations would result in plaintiff's immediate insolvency and bankruptcy and would cause irreparable damage not capable of monetary computation.

The trial court made findings of fact consistent with plaintiff's evidence and concluded "that there is probable cause for supposing that the Plaintiff will be able to sustain its primary equity and that there is reasonable apprehension of irreparable loss to the Plaintiff unless a preliminary injunction be granted and that such relief appears reasonably necessary to protect Plaintiff's rights until the controversy between the parties can be determined upon its merits." The court thereupon ordered defendant enjoined, until final determination of the merits of the cause, or until otherwise ordered, from directly or indirectly refusing to accept credit life, credit accident and health insurance business generated by plaintiff pursuant to the contract of the parties dated 1 October 1968, as amended. Defendant was also enjoined from failing to perform other duties specified in the contract.

*Hatch, Little, Bunn, Jones & Few by William P. Few and Harold W. Berry for plaintiff appellee.*

*Smith, Anderson, Blount and Mitchell by John H. Anderson, Henry A. Mitchell, Jr., and Samuel G. Thompson for defendant appellant.*

GRAHAM, Judge.

[1] A temporary injunction will ordinarily be granted pending trial on the merits (1) if there is probable cause for supposing that plaintiff will be able to sustain his primary equity and (2) if there is reasonable apprehension of irreparable loss unless injunctive relief be granted, or if in the court's opinion it appears reasonably necessary to protect plaintiff's rights.

*U-Haul Co. v. Jones,* 269 N.C. 284, 152 S.E. 2d 65; *Conference v. Creech and Teasley v. Creech and Miles,* 256 N.C. 128, 123 S.E. 2d 619.

**[2, 3]**  The law recognizes a distinction, however, between prohibitory and mandatory injunctions. A prohibitory injunction seeks to preserve the status quo, until the rights of the parties can be determined, by restraining the party enjoined from doing particular acts. *Clinard v. Lambeth,* 234 N.C. 410, 67 S.E. 2d 452. A mandatory injunction is intended to restore a status quo and to that end requires a party to perform a positive act. 2 McIntosh, N.C. Practice and Procedure 2d, § 2194, p. 404. A mandatory injunction is comparable in its nature and function to a writ of mandamus, *Carroll v. Board of Trade,* 259 N.C. 692, 131 S.E. 2d 483, and will ordinarily be granted only where the injury is immediate, pressing, irreparable, and clearly established. *Highway Com. v. Brown,* 238 N.C. 293, 77 S.E. 2d 780. See also *Huggins v. Board of Education,* 272 N.C. 33, 157 S.E. 2d 703; Annot. Preliminary Mandatory Injunction, 15 A.L.R. 2d 213. "While in the greater number of instances injunction is a preventive remedy, there is no doubt that the court has jurisdiction to issue a preliminary mandatory injunction where the case is urgent and the right is clear; and, if necessary to meet the exigencies of a particular situation, the injunctive decree may be both preventive and mandatory." *Woolen Mills v. Land Co.,* 183 N.C. 511, 513, 112 S.E. 24, 25.

Defendant contends that the injunction granted in this case is mandatory because it requires the performance of positive acts. It argues that the evidence and the court's findings will not support an injunction of this nature.

**[4]**  We are inclined to view the injunction issued here as prohibitory. Defendant has not ceased the performance of its duties under the contract of 1 October 1968, as amended. It has only threatened to do so. The injunction simply prohibits defendant from carrying out this threat. The effect is to continue the status between the parties until trial, and not to impose a new status or to restore a status that has been interrupted.

**[5, 6]**  However, whether the injunction is deemed to be prohibitory or mandatory, we are of the opinion that it is justified. In reviewing orders for temporary injunctive relief an appel-

late court may look beyond the findings of fact made by the trial court and determine from the evidence whether a preliminary injunction is justified. *Owen v. DeBruhl Agency, Inc.,* 241 N.C. 597, 86 S.E. 2d 197. Plaintiff's theory, which is fully supported by the evidence, is that its business has been almost completely structured around its contract with defendant. An interruption by defendant in the performance of its duties under the contract would result in an immediate loss of commissions on ninety percent of plaintiff's credit insurance business. This would render plaintiff unable to meet its current expenses, cause its $300,000.00 indebtedness to the bank to become immediately due, and result in plaintiff's immediate insolvency. Plaintiff's network of agents would disintegrate and plaintiff would likely cease to exist as a going business. This constitutes, in our opinion, sufficient evidence of an immediate, pressing, and irreparable injury to justify the order requiring defendant to continue its business relationship with plaintiff pending a final hearing.

A balancing of the equities involved further convinces us of the appropriateness of the relief granted.

[7] Defendant contends it is entitled to unilaterally terminate the contract for two principal reasons. First, it contends plaintiff has failed to respond to a demand that it reimburse defendant in the sum of $185,324.82, allegedly owed for business closed during 1964 through 1968. This alleged indebtedness apparently arises from guarantees of profit made to defendant by a company which merged with plaintiff in 1969. According to defendant's affidavit, this indebtedness was not discovered until April 1972 after "an intensive review and research of the Occidental credit insurance program." Demand for payment was first made on 13 April 1972.

We fail to see how defendant will be harmed by continuing its business relationship with plaintiff, at least until there can be a legal determination of this claim. On the other hand, considerable harm could result to plaintiff if it is now put to an election between paying a claim which it questions, or immediately suffering disastrous consequences to its business.

[8] Secondly, defendant says it is informed plaintiff has made arrangements to write insurance for a company other than defendant in the state of Florida and that plaintiff is in the process of making similar arrangements in other states. Assuming this to be true, defendant fails to show how this justifies a

breach in the contractual relationship between the parties. The relationship established by the contract of 1 October 1968, as amended, is not exclusive. Defendant is not precluded under the contract from accepting contracts for credit insurance generated by other agencies. Likewise, plaintiff is free to sell insurance for other companies, subject only to the requirement that it place with defendant one-half of all the credit insurance it sells in any one year or $5,000,000.00 in new premiums, whichever is greater.

Defendant contends the preliminary injunction fails to meet the requirements of G.S. 1A-1, Rule 65(d). This rule provides, among other things, that an injunctive order "shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts enjoined or restrained. . . . "

The first requirement is met by the court's findings of fact and conclusions of law, which show clearly the reason for the order's issuance.

[9]  Defendant strenuously argues that the second requirement is not met, contending that many of the terms used in the order are ambiguous and not sufficiently defined. For instance, defendant questions the court's use of the words "to accept" and the word "generated" in enjoining defendant from "refusing to accept credit life, credit accident and health insurance business generated by the Plaintiff. . . . " These exact words were used in defendant's letter of 24 April 1972 wherein plaintiff was advised that defendant "will be unable to accept new issues of credit life and credit A & H insurance generated through Automobile Dealer Resources on and after May 1, 1972. . . . " Other phrases cited by defendant as ambiguous or indefinite are phrases which appear in the contract of 1 October 1968. The parties functioned under the contract, apparently without complaint, for more than three years. Defendant cannot insist now that the court speak with more clarity than did plaintiff and defendant in establishing the relationship which the court now seeks to preserve, especially when no showing is made as to any previous difficulty on the part of either party in understanding the language used.

[10]  We find that the order also complies with the third mandate of Rule 65(d). The question in this connection is

whether the party enjoined can know from the language of the order itself, and without having to resort to other documents, exactly what the court is ordering it to do. The acts which defendant is enjoined from ceasing are set forth specifically in the order itself. The fact that after a description in the order of each act enjoined, there is added "pursuant to the contract . . . dated October 1, 1968 . . . , " or a similar phrase, is without significance. This wording simply shows the source of the duty. It does not modify in any manner the description of the conduct enjoined.

Affirmed.

Judges PARKER and VAUGHN concur.