620 A.2d 408

**M. LEO STORCH LIMITED PARTNERSHIP et al.**

v.

**EROL'S, INC., et al.**

**No. 797, Sept. Term, 1992.**

Court of Special Appeals of Maryland.

Feb. 25, 1993.

Edward J. Tolchin (Patricia V. Fettmann and Fettmann & Tolchin, on the brief), Fairfax, VA, for appellants.

William D. Quarles (Fred J. Federici, III and Venable, Baetjer, Howard & Civiletti, on the brief), Washington, DC, for appellees.

Argued before MOYLAN, BISHOP and DAVIS, JJ.

BISHOP, Judge.

Appellants, M. Leo Storch Family Limited Partnership and M. Leo Storch Management Corp. (hereinafter collectively referred to as "Storch"), filed a complaint against Appellees, Erol's, Inc. ("Erol's"), BF Holding Co. ("BF Holding"), Blockbuster Holding Corp., and Blockbuster Entertainment Corp., in the Circuit Court for Prince George's County. Storch claimed, *inter alia*, breach of a continuous operation clause of its lease with Erol's and sought interlocutory and permanent injunctive relief. On February 3, 1992, the trial court denied Storch's motion for an *ex parte* and/or interlocutory injunction. The trial court then issued a show cause order. On April 29, 1992, a hearing was held on the show cause order, and the trial court denied Storch's request for an interlocutory injunction. Storch filed a timely notice of appeal to this Court.

## Issues

Storch presents the following issues:

I. Was the trial court's determination, that Storch was unlikely to prevail in an action for damages over and above rent which Erol's had agreed to pay, the incorrect standard to apply in this type of case?

II. Did the trial court err when it determined that a greater injury would be suffered by Erol's if it was required to reopen and maintain the losing business than would be suffered by Storch?

III. Did the trial court err when it determined that there is little likelihood of a fact finder judging irreparable harm?

IV. Did the trial court err when it determined that the business operation does not violate the public interest?

## *Facts*

Storch is the owner of Hilltop Plaza Shopping Center located in Bowie, Maryland. The rentable area of Hilltop Plaza is 116,075 square feet. On August 7, 1984, Hannah Storch, Storch's predecessor, and Erol's entered into an agreement for the lease of a 5,400 square foot portion (4.6522%) of the shopping center. Erol's planned to use the leased premises ("Hilltop Erol's") to sell and rent televisions, video cameras, video tape recorders, videotapes, movies, and accessories. The initial term of the lease was five years, beginning October 1, 1984. Erol's exercised its option to renew the lease for an additional five year term, ending September 30, 1994. Erol's rent obligation was fixed—the monthly rent did not fluctuate with Hilltop Erol's monthly gross sales.

Starting in August 1990, Hilltop Erol's averaged 3,000 customers per month. In order to turn a profit, however, Hilltop Erol's was required to average over 5,000 customers per month. Accordingly, Hilltop Erol's operated at a loss; the store projected that it would continue to operate at a loss in 1992. The entire Erol's chain experienced similar difficulties.

On April 19, 1991, BF Holding purchased all of the outstanding shares of Erol's capital stock owned by Erol's majority stockholder, Mr. Erol Onaran. After the acquisition, BF Holding attempted to revive the Erol's chain, including the Hilltop Erol's store. Despite those efforts, however, Erol's decided to close Hilltop Erol's "[b]ecause the store was losing so much money, in spite of all that had been done for it, it didn't make economic sense to continue to operate [the] store."

After learning of Erol's intention to close Hilltop Erol's, Storch filed the action *sub judice*. In Count III of the complaint, Storch averred:

> Defendants are bound to operate the leased premises "during the entire term of this Lease with due diligence and efficiency" and to "carry at all times in said premises

a stock of merchandise of such size, character and quality as shall be reasonably designed to produce the maximum return to Landlord and Tenant." Defendants are breaching this covenant by closing the Hilltop Plaza store. Plaintiffs are being irreparably injured and will continue to be irreparably injured by defendants' breach.

WHEREFORE plaintiffs pray that the Court issue a temporary and permanent injunction enjoining defendants closing of the Hilltop Plaza store.

Storch relied on, in part, the "continuous operation clause" found in paragraph nine of the agreement which provides:

Tenant shall operate all of the leased premises during the entire term of this Lease with due diligence and efficiency so as to produce all of the gross sales which may be produced by such manner of operation, unless prevented from doing so by causes beyond Tenant's control. Subject to inability by reason of strikes or labor disputes, Tenant shall carry at all times in said premises a stock of merchandise of such size, character and quality as shall be reasonably designed to produce the maximum return to Landlord and Tenant.

On February 3, 1992, the trial court denied Storch's motion for *ex parte* injunctive relief, and, instead, issued a show cause order. Three days later, Hilltop Erol's closed. At the time of the hearing on the show cause order (i.e., the hearing on the motion for interlocutory injunctive relief), Hilltop Erol's had been closed for over six weeks; two years, five months remained until Erol's obligation under the lease agreement would terminate.

Pamela Handy ("Handy"), Erol's district manager, testified that each Erol's store requires a manager, assistant manager, two part-time managers and two part-time associates. Erol's managers must be able to control inventory and "shrinkage," review profit and loss reports, work within budgets, and handle payroll, hiring and firing. Erol's employees undergo a ninety-day training class when they are first hired. According to Handy, in order to be successful within the video industry:

you really need to have some type of movie knowledge; being able to select and help purchase tapes that [Erol's] will select for certain stores. You have to know your customers, what titles are going to rent in a particular store, how many copies you need to buy for that. You need to be able to supply customers with that knowledge; to be able to put a movie in their hands and let them rent.

Handy testified that, in order to reopen Hilltop Erol's, Erol's would have to interview, hire, and train new employees, and would have to purchase five to eight thousand movie titles.

### *Discussion*

### I

### Scope of Review

"[I]t is a rare instance in which a trial court's discretionary decision to grant or to deny a preliminary injunction will be disturbed by this Court...." *State Dep't of Health & Mental Hygiene v. Baltimore County,* 281 Md. 548, 550, 383 A.2d 51 (1977). "The granting or denying of an injunction is within the sound discretion of the trial court and will not be disturbed on appeal unless that discretion has been abused." *Teferi v. Dupont Plaza Assocs.,* 77 Md.App. 566, 578, 551 A.2d 477 (1989) (*citing Holiday Universal Club v. Montgomery County,* 67 Md.App. 568, 576, 508 A.2d 991, *cert. denied,* 307 Md. 260, 513 A.2d 314 (1986), *appeal dismissed,* 479 U.S. 1049, 107 S.Ct. 920, 93 L.Ed.2d 973 (1987); *SECI, Inc. v. Chafitz, Inc.,* 63 Md.App. 719, 725, 493 A.2d 1100 (1985)).

It is well-settled that

a proper exercise of discretion requires the court to consider four factors: likelihood of success on the merits; the "balance of convenience"; irreparable injury, which can include the necessity to maintain the status quo; and, where appropriate, the public interest. And it is the complainant who has the burden of presenting a case justifying the granting of a preliminary injunction, *Balti-*

*more v. Warren Manuf. Co.*, 59 Md. 96, 105 (1882), so that if the facts as stated in the bill of complaint or, when appropriate, as shown by the evidence, are not "full and sufficiently definite and clear, in support of the right asserted, and that such right has been violated," the court will not order preliminary relief. *Id.*

*Baltimore County*, 281 Md. at 554, 383 A.2d 51 (citation omitted). Furthermore, the "failure to show any one of the four factors is sufficient to preclude relief." *Nationwide Mut. Ins. Co. v. Hart*, 73 Md.App. 406, 411, 534 A.2d 999 (1988).

Within the framework of the foregoing principles, we now turn to Storch's contentions. We hold that the trial court did not abuse its discretion when it denied interlocutory injunctive relief because Storch did not prove a "likelihood of success on the merits." Therefore, we will not address the "irreparable injury," "balance of convenience," or "public interest" factors of the four-part test.

## II
### Likelihood of Success on the Merits

The trial court found as a fact that "the likelihood of the plaintiffs prevailing in an action for damages over and above rent which the defendant has agreed to pay is unlikely." Storch argues that

> [s]uch a determination is not only incorrect, it is not a relevant basis for determining whether or not to grant an interlocutory injunction.... The amount of damages recovered is not part of this consideration. The question which should have been addressed ... is the likelihood of ... being able to enforce the continuing operation provisions of the defendants' lease.

Although this may be true, we nevertheless hold that despite Erol's alleged breach, it was unlikely that Storch would succeed in obtaining a permanent injunction to enforce specifically the continuous operation clause of the lease. "[W]here the record in a case adequately demon-

strates that the decision of the trial court was correct, although on a ground not relied upon by the trial court ..., an appellate court will affirm." *See Robeson v. State,* 285 Md. 498, 502, 403 A.2d 1221 (1979), *cert. denied,* 444 U.S. 1021, 100 S.Ct. 680, 62 L.Ed.2d 654 (1980).

Storch is seeking injunctive relief to enforce the continuous operation clause of the lease agreement. Maryland courts have allowed "[i]njunctive relief ... as the functional equivalent of specific performance." *SECI, Inc.,* 63 Md. App. at 726, 493 A.2d 1100. However, " '[a] suit for an injunction which seeks to accomplish all the purposes of a decree for specific performance is subject to the principles which apply to an application for the latter remedy....' " *Id.* (*quoting Smith v. Myers,* 130 Md. 64, 67, 99 A. 938 (1917)) (alteration in original).

It is well-settled that

"where [a] contract is, in its nature and circumstances, unobjectionable—or, as it is sometimes stated, fair, reasonable and certain in all its terms—it is as much a matter of course for a court of equity to decree specific performance of it as it is for a court of law to award damages for its breach."

*Gross v. J & L Camping & Sports Ctr., Inc.,* 270 Md. 539, 543–44, 312 A.2d 270 (1973) (*quoting Glendale Corp. v. Crawford,* 207 Md. 148, 154, 114 A.2d 33 (1955)); *see also Maryland–Nat'l Capital Park & Planning Comm'n v. Washington Nat'l Arena,* 282 Md. 588, 615, 386 A.2d 1216 (1978). It is equally settled, however,

that specific performance will not [ordinarily] be decreed if the performance is of such a character as to make effective enforcement unreasonably difficult or to require such long-continued supervision by the court as is disproportionate to the advantages to be gained from such a decree and to the harm to be suffered in case it is denied.

*Edison Realty Co. v. Bauernschub,* 191 Md. 451, 460, 62 A.2d 354 (1948); *see also* Restatement (Second) of Contracts § 366 (1979) ("A promise will not be specifically enforced if

the character and magnitude of the performance would impose on the court burdens in enforcement or supervision that are disproportionate to the advantages to be gained from enforcement and to the harm to be suffered from its denial."). Although the trial court *may* award injunctive relief notwithstanding the difficulty of enforcement, the failure to grant an injunction under such circumstances does not constitute an abuse of the court's discretion. *See Bauernschub,* 191 Md. at 460, 62 A.2d 354.

At the April 29th hearing, Storch attempted to skirt this limitation by characterizing its requested relief as a "negative injunction." Storch argued:

> [w]hat we are asking you to do is enter a simple order that says, you may not continue to breach the continuous operations clause. Could be two lines; could be three lines. If you do that, there is no supervision of the Court needed. Only one thing needed, them, [sic] to comply with your order. If they don't want to comply, that could be addressed at some later time. That is not before you today.

What Storch fails to realize, however, is that if a dispute arises in the future, the court will become a referee and will be required to determine whether Erol's is with "due diligence and efficiency ... produc[ing] all of the gross sales which may be produced by such manner of operation ... [and] carry[ing] at all times ... a stock of merchandise of such size, character and quality as shall be reasonably designed to produce the maximum return to [Storch] and [Erol's]." *Cf. CBL & Assocs., Inc. v. McCrory Corp.,* 761 F.Supp. 807, 809 (M.D.Ga.1991).

Storch cites *Stamatiades v. Merit Music Serv., Inc.,* 210 Md. 597, 124 A.2d 829 (1956), as the only Maryland appellate court decision addressing the propriety of enforcing, by way of injunction, the continuous operation clause of a lease. In *Stamatiades,* the plaintiff agreed to lend the defendants, proprietors of a restaurant, $3,000 on the condition that they enter into an agreement for the lease of coin-operated amusement devices. The agreement required that

three coin-operated devices be installed in defendants' restaurant and that they remain in continuous operation during the term of the lease. Under the agreement, plaintiff was to receive fifty percent of the machines' gross receipts. Further, the agreement prohibited defendants from installing or permitting the installation of similar equipment supplied by any one other than plaintiff. Defendants also expressly agreed "that a decree might be passed in a suit brought for such purpose enjoining them 'from violating th[e] covenant.'" *Id.* at 602, 124 A.2d 829.

Shortly after the parties entered into the agreement, plaintiff discovered that the machines had been "disconnected and were no longer in use, and either then or thereafter machines furnished by the same competitor whose machines had previously been installed in [defendants'] restaurant were again installed there." *Id.* at 603. Defendants then paid off the $3,000 loan and ordered the removal of plaintiff's machines from the restaurant. After the machines were removed, and after negotiations failed, plaintiff filed suit.

The trial court enjoined the defendants "from placing, or permitting any person or persons other than the plaintiff ... to place or locate any coin-operated amusement, music or vending machines in the premises." *Id.* at 601, 124 A.2d 829. Storch likens the injunction in *Stamatiades* to one necessary to enforce specifically the continuous operation clause of its lease with Erol's. We fail to see any resemblance.

The injunction in *Stamatiades* prohibited the defendants from doing something—using, in their restaurant, coin-operated amusement, music or vending machines not belonging to the plaintiff. This variety of injunction, one that prohibits the doing of an act, is properly characterized as a "negative" or "prohibitory" injunction. *See Automobile Dealer Resources, Inc. v. Occidental Life Ins. Co.*, 15 N.C.App. 634, 190 S.E.2d 729, 732 (1972). The injunction that Storch seeks *sub judice* would require Erol's to reopen its Hilltop store, hire and train new employees, purchase

substantial merchandise, and operate as a retail video operation. This type of injunction is clearly of a "mandatory" nature as it "is intended to restore a status quo and to that end requires a party to perform a positive act." *Id.* *Stamatiades* is, therefore, inapposite.

Storch cites two other cases, *Dover Shopping Ctr., Inc. v. Cushman's Sons, Inc.*, 63 N.J.Super. 384, 164 A.2d 785 (App.Div.1960), and *Lincoln Tower Corp. v. Richter's Jewelry Co.*, 152 Fla. 542, 12 So.2d 452 (1943), to demonstrate that courts have specifically enforced continuous operation clauses of shopping center leases. These cases, however, "are both old ... and against the weight of authority." *CBL & Assocs., Inc.*, 761 F.Supp. at 812. *See generally* John A. Glenn, Annotation, *Lease of Store as Requiring Active Operation of Store*, 40 A.L.R.3d 971 (1971 & Supp. 1992). Several courts have recently rejected *Dover Shopping Ctr., Inc.* and *Lincoln Tower Corp.* and have followed the established principle of equity that

> " * * * '[c]ontracts which by their terms stipulate for a succession of acts, whose performance cannot be consummated by one transaction, but will be continuous, and require protracted supervision and direction, with the exercise of special knowledge, skill, or judgment in such oversight, * * * are not, as a rule, specifically enforced.' Pomeroy on Specific Performance of Contracts, § 312, and cases cited in note 5; Waterman on Specific Performance of Contracts, § 49; *Electric Co. v. Mobile, supra.* [109 Ala. 190, 195, 19 So. 721] * * *."

*Lorch, Inc. v. Bessemer Mall Shopping Ctr., Inc.*, 294 Ala. 17, 310 So.2d 872, 875 (1975) (*quoting Tombigbee Valley R.R. v. Fairford Lumber Co.*, 155 Ala. 575, 47 So. 88 (1908)).

For example, in *New Park Forest Assocs. II v. Rogers Enters., Inc.*, 195 Ill.App.3d 757, 142 Ill.Dec. 474, 552 N.E.2d 1215, *cert. denied*, 133 Ill.2d 559, 149 Ill.Dec. 324, 561 N.E.2d 694 (1990), the plaintiff shopping center brought an action against one of its tenants, seeking a temporary injunction, an order of specific performance, and a perma-

nent injunction to prevent the defendant from closing its store in violation of a continuous operation clause. The lease required defendant to "operat[e] [the] store for the 'sale and repair of better quality jewelry'" and prohibited defendant from "'vacat[ing] or abandon[ing] the Premises at any time during the Term.'" *Id.* 142 Ill.Dec. at 475, 552 N.E.2d at 1216. The Appellate Court of Illinois held that the plaintiff did not have a likelihood of success on the merits.

> In this case, success on the merits means that the court would order specific performance of the long term lease.

*   *   *   *   *   *

> Generally, Illinois courts have refused to enter mandatory injunctions to enforce contracts "which by their terms call for a succession of acts whose performance can not be consummated by one transaction, and which require protracted supervision and direction. * * * A court of equity will not assume what it can not practically accomplish."

*Id.* 142 Ill.Dec. at 477, 552 N.E.2d at 1218 (*quoting Grape Creek Coal Co. v. Spellman,* 39 Ill.App. 630, 632 (1891)).

> The contract in this case calls for [defendant's] continuous occupancy and use of the leased space until approximately December 31, 1997, nine years after [plaintiff] first requested an injunction and specific performance. The lease contains numerous detailed provisions for hours, signs, displays, painting, common areas and other operational requirements. Even the very purpose of the lease, the operation of a premises for the "sale and repair of better quality jewelry," raises enforcement problems for a court which could be placed in the position of deciding what constitutes "better quality." It is possible, that during the life of a mandatory injunction, the court would never have to enforce any of those terms or judge "better quality." Problems may never arise. If prob-

lems did arise, however, the court would find itself in the business of managing a shopping center.

*Id.* 142 Ill.Dec. at 478–79, 552 N.E.2d at 1219–20.

Similarly, the New York Supreme Court, Appellate Division, held that the plaintiff shopping plaza was not entitled to an order of specific performance in *Grossman v. Wegman's Food Mkts., Inc.*, 43 A.D.2d 813, 350 N.Y.S.2d 484 (N.Y.App.Div.1973). The Court recognized

> that a food store will draw people to a shopping center who will also patronize the other stores and that while the food store is closed the business of the other stores will be diminished. There might well be damage to the other tenants while the food store remains vacant, and, if the vacancy extends over a long period of time, it is possible that a tenant might also vacate its premises with resulting damage to plaintiffs.

*Id.* 350 N.Y.S.2d at 485. The Court, however, followed an earlier case, *Price v. Herman*, 81 N.Y.S.2d 361 (N.Y.Sup.Ct. 1948), *aff'd*, 275 App.Div. 675, 87 N.Y.S.2d 221 (N.Y.App. Div.1949), where it was held that a court would not grant an injunction or order specific performance to enforce a continuous operation clause of a lease " 'requir[ing] the performance of varied and continuous acts, or the exercise of special skill, taste, and judgment, . . . because the execution of the decree would require such constant superintendence as to make judicial control a matter of extreme difficulty.' " *Id.* 81 N.Y.S.2d at 362 (*quoting Standard Fashion Co. v. Siegel–Cooper Co.*, 157 N.Y. 60, 51 N.E. 408, 409 (1898)).

We conclude "that the decisions denying injunctive relief reflect the modern trend and the majority rule." *8600 Assocs., Ltd. v. Wearguard Corp.*, 737 F.Supp. 44, 46 (E.D.Mich.1990); *see also CBL & Assocs., Inc.*, 761 F.Supp. at 812; *Lorch, Inc.*, 310 So.2d at 876; *Madison Plaza, Inc. v. Shapira Corp.*, 180 Ind.App. 141, 387 N.E.2d 483, 487 (1979). An interlocutory injunction that requires Erol's to reopen its Hilltop store would be of the "mandatory" variety—Erol's would have to interview, hire, train, and oversee management and employees. Handy's testimony makes

clear that the day-to-day operations of the store would necessarily include varied and continuous acts that require the exercise of special skill, taste, and judgment. *See Lorch, Inc.,* 310 So.2d at 875; *Grossman v. Wegman's Food Mkts., Inc.,* 350 N.Y.S.2d at 485–86.

Although it is quite possible that, during the life of a mandatory injunction, the court would never have to enforce any of the terms of the continuous operation clause, if problems did arise, the court would find itself in the business of managing a retail video operation. *See Rogers Enters., Inc.,* 142 Ill.Dec. at 479, 552 N.E.2d at 1220. We do not hold that injunctive relief may never be ordered to enforce a continuous operation clause under compelling circumstances. That decision lies within the sound discretion of the trial court. We hold only that the trial court did not abuse its discretion in the case *sub judice* because the injunction could require the continuous supervision of the court over an extended period of time and, therefore, would make "effective enforcement unreasonably difficult." *Bauernschub,* 191 Md. at 460, 62 A.2d 354.

JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANTS.