UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

WEGCO, INCORPORATED,
            *Plaintiff-Appellee,*

v.                                                         No. 00-2053

GRIFFIN SERVICES, INCORPORATED,
            *Defendant-Appellant.*


WEGCO, INCORPORATED,
            *Plaintiff-Appellant,*

v.                                                         No. 00-2123

GRIFFIN SERVICES, INCORPORATED,
            *Defendant-Appellee.*


Appeals from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Gerald Bruce Lee, District Judge.
(CA-98-452-A)

Argued: May 7, 2001

Decided: September 19, 2001

Before WIDENER and WILKINS, Circuit Judges, and
Arthur L. ALARCON, Senior Circuit Judge of the
United States Court of Appeals for the Ninth Circuit,
sitting by designation.

---

Affirmed in part and vacated in part by unpublished per curiam opinion. Judge Widener wrote an opinion concurring and dissenting in part.

## COUNSEL

**ARGUED:** Joseph William Koegel, Jr., STEPTOE & JOHNSON, L.L.P., Washington, D.C., for Appellant. Roger A. Colaizzi, VENABLE, BAETJER, HOWARD & CIVILETTI, L.L.P., Washington, D.C., for Appellee. **ON BRIEF:** Damon W.D. Wright, VENABLE, BAETJER, HOWARD & CIVILETTI, L.L.P., Washington, D.C., for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

PER CURIAM:

Griffin Services, Incorporated appeals the judgment in this contract action brought by WEGCO, Incorporated. Griffin argues primarily that its Seventh Amendment right to a jury trial was violated when the district court awarded damages in addition to those awarded by the jury and granted a declaratory judgment to WEGCO. We vacate the supplemental damage award and affirm the declaratory judgment.

### I.

WEGCO is a Maryland corporation that assists its clients in obtaining and executing government contracts. Griffin is a Georgia corporation that provides the federal government with commercial facilities management and mechanical maintenance services.

In late 1994, WEGCO approached Griffin and offered to identify federal government contract opportunities, assist Griffin in obtaining the contracts, and provide support services after the contracts were awarded. Griffin and WEGCO subsequently executed two contracts, the "Kansas City Agreement" and the "New Alexandria Agreement."[1]

---

[1]The parties also executed a third agreement, the "Parr Agreement," which is not relevant to the issues before us.

WEGCO's compensation under each agreement was composed primarily of a percentage of Griffin's "Net Profit," which the agreements defined as "all job site revenues minus all job site costs with respect to this work." J.A. 34, 40. The percentage increased on a sliding scale as the amount of profit increased. Both agreements provided that interest would accrue on late payments at an annual rate of 15 percent.

Griffin was awarded the government contracts that were the subject of the two agreements. In calculating its "Net Profit" for the purpose of making its payments to WEGCO, Griffin identified all revenues from the government contracts and then deducted only direct costs, rather than all costs. Under this methodology, indirect costs such as overhead were not deducted. Griffin subsequently concluded that WEGCO had failed to perform some of the services required by the agreements, and Griffin eventually notified WEGCO that it was terminating the agreements on that basis.

WEGCO challenged the termination and, in March 1998, filed this diversity action in the United States District Court for the Eastern District of Virginia. As is relevant here, WEGCO alleged that Griffin breached the agreements by failing to pay all of the fees due. WEGCO sought money damages and a judgment declaring, *inter alia*, that (a) Griffin's failure to pay monies due under the agreements constituted a breach of contract; (b) Griffin was obligated to pay monies then owing under the agreements as well as monies that would be due in the future; and (c) the agreements continued to be valid and binding and could not be terminated. WEGCO also requested an accounting of the agreements. In its answer, Griffin's allegations included a claim that WEGCO had breached the agreements. Griffin also demanded a jury trial on all issues.

During discovery, WEGCO sought information that would assist it in determining the amount due under the agreements. Prior to the close of discovery on October 30, 1998, Griffin produced the requested information for the period ending July 31, 1998. Griffin never supplemented its discovery responses after close of discovery and WEGCO never moved to compel.

During the ensuing jury trial, the parties introduced evidence regarding whether Griffin had breached the agreements and how dam-

ages should be calculated if Griffin had breached. Concerning damages, the parties advanced diverging theories regarding how to interpret the term "Net Profit." WEGCO argued that only direct costs should be subtracted from revenues and noted that Griffin itself had employed this methodology before the lawsuit was commenced. Employing this methodology, WEGCO's expert opined that WEGCO was owed "at least $144,404.97 plus interest" under the New Alexandria Agreement, J.A. 100, and "at least $84,284.34 plus interest" under the Kansas City Agreement, *id.* at 98. WEGCO's evidence of Griffin's revenues and costs and its expert's testimony calculating "Net Profit" from that data accounted for the period ending July 31, 1998. WEGCO produced no evidence of damage calculations for any subsequent period, although it did present evidence that the agreements continued to be in effect.

Its prelitigation conduct notwithstanding, Griffin took the position at trial that all costs—both direct and indirect—should be subtracted from revenues in order to determine "Net Profit." The methodology advanced by Griffin yielded two possible results for each agreement: WEGCO was overpaid either $15,766 or $16,124 for the New Alexandria Agreement and underpaid either $20,763.11 or $18,962.30 for the Kansas City Agreement.

At the conclusion of the trial, the jury returned a special verdict finding, as is relevant here, that WEGCO had not breached either agreement; that Griffin had breached both agreements by failing to pay sums due to WEGCO; and that "the total amount of the damage to WEGCO caused by Griffin Services' failure to pay WEGCO what it was due" was $64,000 for the New Alexandria Agreement and $75,000 for the Kansas City Agreement. *Id.* at 1099, 1101.

After the jury was dismissed, WEGCO moved for a declaratory judgment that the agreements continued to be in effect and requested an accounting to determine additional amounts allegedly due WEGCO under the agreements through the date of WEGCO's motion. WEGCO further requested that this calculation be made by an independent accountant using the methodology WEGCO had advocated at trial. Finally, WEGCO prayed that Griffin be ordered to pay WEGCO any monies that the accounting determined to be due.

Griffin opposed the motion, maintaining that granting additional relief would violate its right to a jury trial.

The district court determined that the jury award included damages for the period ending July 31, 1998, and therefore no recalculation of damages for that period was necessary. However, the district court granted WEGCO a declaratory judgment that Griffin had not terminated the agreements and that they were still valid, binding, and in effect. The district court also ordered an accounting of net profits received by Griffin for the government contracts underlying the agreements. The district court directed that the method for calculating "Net Profit" in the accounting would be that proposed at trial by WEGCO's expert. The district court stated that upon receiving and verifying the results of the accounting, it would order declaratory relief in the amount due. The court also ordered Griffin to allow WEGCO access to its records concerning the underlying contracts twice a year for the duration of the agreements.

The accounting ordered by the district court encompassed the period from August 1, 1998 through February 28, 1999 for the Kansas City Agreement and from August 1, 1998 through November 30, 1999 for the New Alexandria Agreement. Because the auditor could not determine how much of the damage awards the jury allocated to the period between the beginning of the respective contract years (March 1, 1998 for the Kansas City Agreement and December 1, 1997 for the New Alexandria Agreement) and July 31, 1998, the auditor could not calculate the appropriate sliding-scale percentage needed to calculate WEGCO's compensation. Accordingly, the auditor did not calculate the compensation owed to WEGCO under the Kansas City Agreement, and it calculated the amount owed to WEGCO under the New Alexandria Agreement only for the period from December 1, 1998 through November 30, 1999. As to this period, the auditor determined that the "Net Profit" was $274,663.06 and that Griffin owed WEGCO $102,331.53 plus $4,134.34 in interest.

The district court adopted the findings in the auditor's report and supplemented those findings with its own determinations. The court concluded that Griffin owed WEGCO $5,485.54 plus $1,371.39 in interest under the New Alexandria Agreement for the period from August 1, 1998 through November 30, 1998. The district court further

determined that Griffin owed WEGCO $27,775.86 plus $6,131.14 in interest under the Kansas City Agreement for the period of August 1, 1998 through February 28, 1999. A final judgment was then entered against Griffin for $286,229.80, $139,000 of which represented the jury verdict and $147,229.80 of which represented the supplemental damages awarded by the district court.

## II.

Griffin first argues that the district court erred in supplementing WEGCO's damage award on its breach of contract failure-to-pay claims. We agree.

The Seventh Amendment provides that

> [i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law.

U.S. Const. amend. VII. This protection applies to all suits in which legal, rather than equitable, rights are at issue. *See Curtis v. Loether*, 415 U.S. 189, 193 (1974). Whether the right to a jury trial exists is a question of law that we review de novo. *See Pandazides v. Va. Bd. of Educ.*, 13 F.3d 823, 827 (4th Cir. 1994). If a denial of the right to jury trial occurred, we must decide whether the denial constituted harmless error. *See id.* The error is harmless only if the district court would have granted judgment as a matter of law to the defendant, *i.e.*, if "the evidence is such, without weighing the credibility of the witnesses, that there is only one conclusion that reasonable jurors could have reached." *Keller v. Prince George's County*, 827 F.2d 952, 955 (4th Cir. 1987).

In diversity cases, although the substantive rights asserted in a claim arise under state law, "the characterization of that state-created claim as legal or equitable for purposes of whether a right to jury trial is indicated must be made by recourse to federal law." *Simler v. Conner*, 372 U.S. 221, 222 (1963) (per curiam). Ordinarily, an action on

a debt alleged to be due under a contract is an action at law. *See Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 476-77 (1962); *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 235 F.3d 1184, 1194 (9th Cir. 2000) ("In most instances, a claim seeking money damages for breach of contract is an action at law."). That a party requests an "accounting" to determine the amount of damages to be awarded does not by itself change the legal nature of a breach of contract claim.[2] *See Dairy Queen*, 369 U.S. at 477-78 (rejecting notion that a claim for payment of money was equitable solely because the "complaint is cast in terms of an 'accounting,' rather than in terms of an action for 'debt' or 'damages'"). And, the fact that the claim is one for declaratory relief does not affect the legal or equitable character of the issues to be decided. *See Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 504 (1959).

We conclude that the district court violated Griffin's constitutional right to a jury trial when it supplemented WEGCO's damage award. WEGCO'S failure-to-pay claims were simply claims on a debt created by contract. Therefore, Griffin had a Seventh Amendment right to have these claims adjudicated by a jury, and the district court erred in making its own findings regarding what monies were owed WEGCO by Griffin and in supplementing the jury award based on those findings.[3]

---

[2]A claim for damages resulting from breach of contract may be deemed equitable when the plaintiff demonstrates "that the accounts between the parties are of such a complicated nature that only a court of equity can satisfactorily unravel them." *Dairy Queen*, 369 U.S. at 478 (internal quotation marks omitted). WEGCO has made no such showing.

[3]WEGCO argues that this suit was partly equitable because it sought the equitable remedy of specific performance. That is incorrect. Under Maryland law, specific performance is an "extraordinary equitable remedy" that may be granted only when "more traditional remedies, such as damages, are either unavailable or inadequate." *Archway Motors, Inc. v. Herman*, 378 A.2d 720, 724 (Md. Ct. Spec. App. 1977). Here, any non-payment by Griffin was remediable by an award of money damages, and that is the remedy WEGCO sought for its failure-to-pay claims.

Because the only remedy sought for the failure-to-pay claims was legal, WEGCO is also incorrect in its contention that Griffin waived its right to a jury trial on the failure-to-pay claims by failing to plead the defense of election of remedies.

WEGCO maintains, however, that the district court did not make findings of fact itself, but rather, simply applied the law to the findings necessarily made by the jury. That is incorrect. First of all, the findings of the district court regarding the amount of Griffin's revenue and indirect costs for the period beginning August 1, 1998 were not based on any findings made by the jury. Furthermore, although WEGCO argues that a methodology for calculating "Net Profit" can be derived from the jury verdict, we do not agree. WEGCO maintains that the jury accepted Griffin's figures regarding the amount of revenue and indirect costs and used WEGCO's methodology because doing so would produce total damages of $139,802, and the total verdict was $139,000. We are not persuaded from the closeness of these numbers that the jury arrived at its verdict in the manner suggested by WEGCO. The most telling evidence that the jury did not do so is that it awarded $64,000 in damages for Griffin's breach of the New Alexandria Agreement and $75,000 for Griffin's breach of the Kansas City Agreement; these awards would have been $54,230 and $85,572, respectively, were WEGCO correct about the basis for the jury verdict.[4] Any attempt on our part to divine the methodology the jury employed to reach its verdict would amount to rank speculation.

WEGCO also argues that the district court possessed inherent equitable authority to make the necessary findings and supplement the damage award with additional amounts not submitted to the jury. We know of no authority, however, allowing a district court to act as fact finder regarding a purely legal claim on which a party has demanded a jury trial.

We further conclude that the error of the district court in supplementing the damages awarded by the jury was not harmless. The evidence regarding the appropriate methodology for calculating net profits under the agreements was sharply conflicting, and reasonable juries could have reached different results. Accordingly, we vacate

---

[4]WEGCO attributes this discrepancy to "Griffin's argument that any loss under one Services Agreement during a particular month should be offset against any gain in the other one." Br. of Appellee/Cross-Appellant at 31. However, no calculations regarding offsets were ever presented to the jury.

the supplemental damages award.[5] *See Pandazides*, 13 F.3d at 833 (holding that denial of jury trial was not harmless when evidence was conflicting).

### III.

Griffin next argues that the district court violated its Seventh Amendment rights by declaring that Griffin had not terminated the agreements and that they remained in effect.[6] We conclude that any error was harmless. Although the jury did not explicitly find that the agreements remained in force, it did reject Griffin's only basis for terminating the agreements, namely, its contention that WEGCO had breached the agreements.

Griffin maintains that it was prejudiced by the declaration of its continuing obligation to pay because the jury award already included damages for future, as well as past, nonpayments; thus, Griffin contends that without the declaratory judgment, it would have no further obligation under the agreements. We reject Griffin's premise that the jury award included damages for future nonpayments. Nothing in the jury instructions or special verdict form allowed the jury to assume that Griffin would continue to breach the agreements after trial or permitted the jury to award damages for breaches that had not yet occurred. The jury was instructed that WEGCO was "entitled to be placed in the same situation as if the contract had not been broken," J.A. 1008, which would not have allowed the jury to award WEGCO payments to which it was not yet entitled. The special verdict form asked the jury to find the total damages resulting from Griffin's fail-

---

[5]Because we vacate the supplemental damages award, we do not address Griffin's arguments regarding the correctness of the findings underlying the award. We also do not reach WEGCO's argument on cross-appeal that the final judgment did not include the exact amount of contractual prejudgment interest due on the date of the final judgment for the supplemental award.

[6]The partial dissent concludes that the declaratory judgment award was improper under Maryland state law for several reasons. We do not address these state-law issues because they were *not* raised by Griffin on its appeal to us. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 241 n.6 (4th Cir. 1999).

ure to pay what WEGCO "was due," again indicating that damages resulting from Griffin's failure to pay monies not yet due were not to be awarded. *Id.* at 1099, 1101.

## IV.

For the foregoing reasons, the supplemental damage award is vacated and the declaratory judgment is affirmed.

*AFFIRMED IN PART AND VACATED IN PART*

WIDENER, Circuit Judge, concurring and dissenting in part:

I concur in parts I and II of the majority opinion and the decision that the district court's award of damages in addition to those awarded by the jury violated Griffin's Seventh Amendment right to a jury trial. I join its decision to vacate the supplemental award. However, I disagree with part III of the opinion, except the first paragraph thereof, as it affirms the district court's declaratory judgment. To that I respectfully dissent. The district court's declaratory judgment should be vacated essentially because it grants to WEGCO the remedy of specific performance of a contract for personal services, a remedy long repugnant to Maryland law, and, as well, it splits a cause of action.

Maryland Courts have followed a functional approach when deciding whether to award a remedy that, while nominally different, has the same effect as specific performance. In *M. Leo Storch Ltd. Partnership v. Erol's, Inc.*, 620 A.2d 408, 414 (Md. Ct. Spec. App. 1993), the Maryland Court of Special Appeals treated a request for an injunction to prevent the defendant from breaching a continuous operations clause of a lease as a request for specific performance. The plaintiff asked that the court "enter a simple order that says, you may not continue to breach the continuous operations clause." 620 A.2d at 412. The court refused to do so stating that "Maryland Courts have allowed injunctive relief . . . as the functional equivalent of specific performance. However, a suit for an injunction which seeks to accomplish all the purposes of a decree for specific performance is subject to the principles which apply to an application for the latter remedy."

620 A.2d at 411 (internal quotation marks and alterations omitted). The District court's order in the instant case declared that the services agreements remained in effect and ordered that the parties "shall comply with the compensation provisions of the two Services Agreements *and perform as required in the future*." (italics supplied). It is evident that the district court's declaratory judgment here is nearly identical to the relief that the *M. Leo Storch* court denied because it was the functional analogue of specific performance. Because the declaratory judgment here operates as a grant of specific performance, the District court should have inquired into whether the latter remedy was appropriate.

Maryland will not "ordinarily enforce a contract for personal service," the reason being that "the mischief likely to result from the enforced continuance of the relationship incident to the service when it has become personally obnoxious to one of the parties is so great that the best interests of society require that the remedy be refused." See *Fitzpatrick v. Michael*, 9 A.2d 639, 641 (Md. 1939). *Fitzpatrick* refused to enforce a contract in which an elderly man whimsically, arbitrarily and unjustly refused to honor a contract to provide a home in return for the personal services of a long time nurse and companion. The court reasoned that specific performance of the personal services contract should be denied because "it would compel him to accept the personal service of an employee against his wish and his will," *Fitzpatrick*, 9 A.2d at 643, exactly the situation which pertained here. Under the terms of the services agreements, WEGCO is to provide business advice and services to Griffin. It is clear that Griffin no longer wants the advice and services and it has formally severed the contractual relation for which breach of contract WEGCO has sued. The declaratory judgment awarded by the district court would require Griffin to continue to receive unwanted advice and services and to maintain a relationship that would be obnoxious to him, especially considering the present hostility. A contract for providing advice, whether it be for personal or business purposes, will abide only so long as confidence and trust remain. When these aspects vanish, the possibility for successful enforcement of a relationship based on them also vanishes and specific performance is therefore inappropriate. "'It is not for the interest of society that persons who are not desirous of

maintaining continuous personal relations with one another should be compelled so to do.'"[1] *Fitzpatrick*, 9 A.2d at 641.

Aside from the difficulties peculiar to personal service contracts, specific performance and its equivalents are inappropriate because judicial supervision of the performance required under these services agreements would be of long duration and has the potential of becoming quite difficult. *M. Leo Storch*, 620 A.2d at 413. Furthermore, specific performance is denied particularly when, as in this case, a legal remedy was available. WEGCO's legal remedy was for damages for total breach of contract, including future damages. See *Friedman v. Katzner*, 114 A. 884, 887 (Md. 1921) (recognizing suit for anticipatory repudiation and holding that such a suit "excused the vendor from further performance."); 13 Williston on Contracts § 39:37 (4th Ed. 2000) (relying on *Restatement* (2nd) Contracts, § 253, comment b) (stating that "a breach by repudiation gives rise to a claim for dam-

---

[1]This contract does not fall under the exception allowing specific performance of some personal service contracts where the party rendering the service has substantially or fully performed. See *Ledingham v. Bayless*, 145 A.2d 434, 440 (Md. 1958) (enforcing contract to make will to devise one half interest in land where plaintiff had fully rendered personal services in accordance with agreement); *Snodgrass v. Stubbs*, 189 Md. 28, 48, 54 A.2d 338, 347 (Md. 1947). See also *Stamatiades v. Merit Music Service*, 210 Md. 597, 610, 124 A.2d 829 (1956) (granting injunction to prevent restaurant owner from removing or disconnecting service provider's vending machines). The contracts at issue in the instant case contemplate continuing performance on the part of WEGCO; it must render business advice and other services to Griffin for the life of the underlying government contracts. For example, the New Alexandria Agreement states that "this Agreement shall remain in effect for the duration of any government contract, including any and all extensions, options, modifications, extra change orders, novations, or follow-on contracts." For example, should Griffin seek an extension or renewal of the government contract, WEGCO would be required under the Agreement to "assist in negotiating renewal options." Under these circumstances, Maryland follows the Illinois rule that " '[c]ontracts which by their terms stipulate for a succession of acts, whose performance cannot be consummated by one transaction, but will be continuous, and require protracted supervision and direction, with the exercise of special knowledge, skill, or judgment in such oversight, are not, as a rule, specifically enforced.'" *M. Leo Storch*, 620 A.2d at 413.

ages for total breach."). See also *Rozay v. Hegeman Steel Products, Inc.*, 234 N.Y.S.2d 647, 650 (N.Y. Sup. Ct. 1962) (stating that "suit for anticipatory breach of an executory personal service contract is a recognized cause of action . . . [and] the material breach of a contract, performance of which has begun, will justify immediate action for all damages, past, present, and future"). WEGCO asked for future damages in its complaint but failed to present evidence about what those future damages would be. WEGCO did not request jury instructions on determining future damages. Nor did WEGCO object to the absence of an instruction on future damages. It appears, therefore, that WEGCO has waived any claim it may have had to future damages. Fed. R. Civ. P. 51.[2]

Perhaps recognizing its mistake in failing to prove, or even argue for future damages, WEGCO seeks to preserve its position although it has split its cause of action as prohibited under Maryland law. In *Ex Parte Carlin*, 129 A.2d 827, 831 (Md. 1957), the Maryland Court of Appeals stated that "[i]t is well established that a single cause of action or an entire claim cannot be split up or divided and separate suits maintained for the various parts thereof." See also *Levin v. Friedman*, 317 A.2d 831, 835 (Md. 1974). The policy behind this rule is the prevention of a multiplicity of litigation and avoidance of the vexation, costs and expenses incident to more than one suit on the same cause of action. *Jones v. Speed*, 577 A.2d 64, 68 (Md. 1990). Yet, this is exactly what will occur here. Any extension or modification of the government contracts, for example, will entitle Griffin to services from WEGCO and WEGCO to payment from Griffin. It may not even be doubted, that under the declaratory judgment WEGCO has received, Griffin will receive advice and services it no longer wants, that sufficiency of performance on the part of both parties will

---

[2]Instructions number B-15 and B-16 which were given to the jury, without objection, under any ordinary reading of Maryland law contemplate the award of future damages. See *National Micrographics Systems, Inc. v. OCE-Industries, Inc.*, 465 A.2d 862 (Md. 1983). The fact that the special verdict form, which also was not objected to, was treated by the district court as excluding future damages is proof certain that if WEGCO had any future damages it has either waived them or received them. WEGCO should not be allowed to blow hot and cold at the same time, indeed it offered instructions B-15 and B-16.

arise in the future, and the court will become entangled in this dispute once again.

For the foregoing reasons I would vacate the district court's grant of declaratory judgment that the services agreements are still in force.