Wheeler v. Wheeler, 2018 NCBC 117.

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
17 CVS 16248

CHRISTOPHER GRAY WHEELER,

Plaintiff,

v.

JOSEPH GRAY WHEELER; SCOTT
A. MOE; and YALE CAROLINAS,
INC. d/b/a WHEELER MATERIAL
HANDLING, INC.,

Defendants.

**(REDACTED) ORDER AND OPINION
ON PLAINTIFF'S MOTION FOR
PRELMINARY INJUNCTION\***

1.     An officer and director's right under North Carolina law to advancement of costs and attorneys' fees needed to defend himself in a lawsuit brought by his corporate employer claiming corporate misconduct has never been addressed by our appellate courts.[1]  In this action, Plaintiff contends that, because his former corporate employer included a provision in its by-laws requiring the corporation to advance such costs and fees, he is entitled to a mandatory injunction requiring the corporate

---

\* Recognizing that this Order and Opinion cites and discusses the subject matter of documents that the Court has previously allowed to remain filed under seal in this case, this Order and Opinion is filed under seal at ECF No. 135.  This public version of the Order and Opinion redacts those portions of the Order and Opinion claimed to be confidential.
[1] The Court is aware of one case in which our appellate courts have dealt with the issue of advancement.  *See Swenson v. Thibaut*, 39 N.C. App. 77, 115–16, 250 S.E.2d 279, 303 (1978), *cert. denied and appeal dismissed*, 296 N.C. 740, 254 S.E.2d 181 (1979).  In that case, however, which was decided under the 1955 version of the North Carolina Business Corporation Act, minority shareholder plaintiffs moved to enjoin a corporation from continuing to advance fees to a director defendant.  *See id.*  Conversely here, this case involves an officer/director who seeks an injunction requiring the corporation to advance fees under the corporation's by-laws after the corporation refused to do so.

defendant to pay his expenses incurred in defending claims against him by the corporation.

2.     Plaintiff Christopher Gray Wheeler ("Gray") filed his Motion for Preliminary Injunction (the "Motion") on August 15, 2018.  (ECF No. 95 ["Mot."].) Having considered the affidavits, briefs, arguments of counsel at the hearing on the Motion, and supporting materials presented to the Court, the Court makes the following findings of fact and conclusions of law for the limited purpose of resolving the Motion, without prejudice to making contrary or different findings and conclusions in subsequent orders.  *See Lohrmann v. Iredell Mem'l Hosp., Inc.*, 174 N.C. App. 63, 75, 620 S.E.2d 258, 265 (2005) ("It is well settled that findings of fact made during a preliminary injunction proceeding are not binding upon a court at a trial on the merits.").

3.     For the reasons stated herein, the Court **DENIES** the Motion.

*Cadwalader, Wickersham & Taft LLP, by Jonathan M. Watkins, Aaron C. Lang, Nathan M. Bull, and Hyungjoo Han, for Plaintiff.*

*Nexsen Pruet, PLLC, by James C. Smith, Kathleen D.B. Burchette, and Samantha K. Lloyd, for Defendant Joseph Gray Wheeler.*

*Robinson, Bradshaw & Hinson, P.A., by John R. Wester, D. Blaine Sanders, and Lucas Anderson, for Defendants Scott A. Moe and Yale Carolinas, Inc.*

Robinson, Judge.

## I.     FINDINGS OF FACT

4.     Yale Carolinas, Inc. ("YCI" or the "Company") is a private, closely held corporation organized under the laws of North Carolina with its principal place of

business in Charlotte, North Carolina. (Suppl. Am. Compl. ¶ 6, ECF No. 94 ["Am. Compl."]; Am. Answer & Countercl. of Yale Carolinas, Inc. & Answer of Scott A. Moe ¶ 6, ECF No. 98 ["Answer"/"Litigation Counterclaims"]; *see* ECF No. 56.3.) YCI currently has three shareholders: Defendant Joseph Gray Wheeler ("Joe"), Gray, and Defendant Scott A. Moe ("Scott" and, collectively with, YCI and Joe, "Defendants"). (Am. Compl. ¶ 6; Answer ¶ 6.) YCI is in the business of selling, renting, servicing, and providing parts for "material-handling equipment such as forklifts, scissor lifts, personnel carriers, fuel cells, batteries and chargers, and refueling systems." (Am. Compl. ¶ 6; Answer ¶ 6.)

5. Joe is the majority and controlling shareholder of YCI, owning 51.19% of the Company's stock. (Am. Compl. ¶ 4; Answer ¶ 4.) In addition, Joe serves as Chairman of the Company's Board of Directors (the "Board") and as the Company's Chief Executive Officer. (Am. Compl. ¶ 4; Answer ¶ 4.) Joe is Gray's father. (Am. Compl. ¶ 4; Answer ¶ 4.)

6. Gray joined YCI in 2004 as its Controller/CFO and was promoted to Vice President of Operations in 2005. (Am. Compl. ¶ 3; Answer ¶ 3.) From 2009 until the end of 2016, Gray served as YCI's President. (Am. Compl. ¶ 3; Answer ¶ 3.) Gray owns 33.45% of YCI's stock. (Am. ¶ Compl. 3; Answer ¶ 3.) Gray became a member of the Board in 2005.[2] (Am. Compl. ¶ 3; Answer ¶ 3.)

---

[2] The parties dispute whether Gray continues to serve as a director of YCI. Gray alleges that he continues to serve on the Board. (Am. Compl. ¶ 3.) YCI asserts that the Board removed Gray as a director in 2017. (Answer ¶ 3.) For reasons made clear below, Gray's current status as a director of YCI is immaterial to the question of whether he is entitled to advancement.

7.      Scott worked as an account manager for YCI from 1989 to 1994, was then rehired by Joe in 2003, and later promoted to Vice President of Sales. (*See* Am. Compl. ¶ 5; *see* Answer ¶ 5.) Scott was promoted to President of YCI in 2017. (Am. Compl. ¶ 5; Answer ¶ 5.) Scott owns 15.36% of the Company's stock. (Am. Compl. ¶ 5; Answer ¶ 5.)

8.      Upon becoming a shareholder of YCI, on April 18, 2005, Gray executed an Addendum to the Buy Sell Agreement of Yale Carolinas, Inc., agreeing to be bound by the Buy/Sell Agreement of Yale Carolinas, Inc., effective as of November 8, 1998 (the "Buy/Sell Agreement"). (Litigation Countercl. Ex. C; *see* Litigation Countercl. Ex. B ["Buy/Sell Agreement"].) The Buy/Sell Agreement provides that if any shareholder of YCI who is also an employee is terminated for cause, the shareholder "shall offer to sell all of his [shares]" at either an agreed upon price or at book value. (Buy/Sell Agreement ¶¶ 3–4.)

9.      In November 2016, Gray notified Joe and Scott of his desire to "transition out of the company" over an extended period. (Am. Compl ¶ 58; *see* Answer ¶ 58.) Ultimately, Gray resigned as President of YCI, effective December 31, 2016, although he continued to receive his base salary through January 31, 2017. (*See* Consent of Directors of Yale Carolinas, Inc. to Action Without a Meeting 1, ECF No. 106.2 ["Resolutions"].)

10.      Prior to his resignation, Gray sent an e-mail to Joe on December 28, 2016 agreeing to a buy-out of his shares at book value, which Gray estimated to be in the "$3.5m-$4m range, give or take" (the "December 28 Agreement"). (Litigation

Countercl. Ex. A, at 1 ["December 28 Agreement"].) Defendants allege that they tendered the first payment for the purchase of Gray's shares in March 2017, but that Gray refused to accept the payment. (Litigation Countercl. ¶ 34.)

11. Six months later, Gray initiated this action naming YCI and Joe as defendants. (*See generally* Compl., ECF No. 4.) That same day, Gray designated this action as a mandatory complex business case under section 7A-45.4(a) of the North Carolina General Statutes, (ECF No. 5), and it was designated by order of Chief Justice Mark Martin of the Supreme Court of North Carolina dated September 5, 2017, (ECF No. 3), and assigned to the Honorable Louis A. Bledsoe, III by order of then-Chief Business Court Judge James L. Gale on September 6, 2017, (ECF No. 2). This action was reassigned to the undersigned on November 8, 2017. (ECF No. 15.)

12. In the Complaint (subsequently amended), Gray asserted claims for breach of fiduciary duty, constructive fraud, unfair or deceptive trade practices under N.C. Gen. Stat. § 75-1.1,[3] and judicial dissolution of YCI. (Compl. 36–43.) Gray bases these claims on Joe's alleged disloyalty, self-dealing, and abuse of his position as majority shareholder of YCI. (*See* Compl. ¶¶ 72, 79, 85, 92.)

13. Pursuant to a joint stipulation of Gray, YCI, and Joe, Gray filed his Amended Complaint on January 18, 2018, which added Scott as a party to some but not all of Gray's claims. (ECF No. 38.)

---

[3] On April 25, 2018, this Court dismissed with prejudice Gray's claim for unfair or deceptive trade practices. *Wheeler v. Wheeler*, 2018 NCBC LEXIS 38, at *14 (N.C. Super. Ct. Apr. 25, 2018).

14. At about the same time Gray initiated this action, he initiated arbitration proceedings against Joe and YCI, later adding Scott as a party to the arbitration, captioned *Wheeler v. Wheeler, Moe & Yale Carolinas, Inc.*, AAA Case No. 01-17-0005-2453 (the "Arbitration"). (ECF No. 79.1.) Gray bases his claims in the Arbitration on many of the same allegations in this action, and seeks there to vindicate his rights under the Buy/Sell Agreement. (*See generally* ECF No. 79.1.)

15. On November 6, 2017, YCI asserted counterclaims against Gray in this action, (ECF No. 14), and, on February 16, 2018, asserted counterclaims in the Arbitration, (ECF No. 82.2), both subsequently amended. In this action, YCI asserts claims against Gray for breach of contract, conversion, fraud, breach of fiduciary duty, civil remedy for larceny and embezzlement, and multiple claims for declaratory judgment. (*See* Litigation Countercl. 21–25.) YCI asserts nearly identical counterclaims against Gray in the Arbitration. (*See* Second Am. Answer of Yale Carolinas, Inc. & Scott Anthony Moe to Am. Demand for Arbitration & Am. Countercl. 12–16, ECF No. 96.1 ["Arbitration Countercl."].)

16. The counterclaims for conversion, fraud, breach of fiduciary duty, and civil remedy for larceny and embezzlement, in both this action and the Arbitration, are premised on allegations that Gray, as President of YCI, secretly increased his compensation without Board approval and/or jeopardized YCI's relationship with its principal supplier Hyster-Yale Group ("HYG") by, among other things, insulting HYG's President. (Arbitration Countercl. ¶¶ 51, 55–56, 59–60, 64–66, 69–72; Litigation Countercl. ¶¶ 51, 55–56, 59–60, 64–66, 69–72.) YCI's first claim in the

Arbitration (second claim for declaratory judgment in this action) seeks a declaration that, due to Gray's alleged misconduct, his termination was "for cause" under the Buy/Sell Agreement and an order directing Gray "to offer all of his shares to YCI at book value" under the Buy/Sell Agreement. (Arbitration Countercl. ¶ 40; Litigation Countercl. ¶ 49; *see* Resolutions 1 ("[B]e it resolved that [YCI] hereby determines that [Gray's] voluntary resignation shall be treated as a termination 'for cause.'").)

17.     YCI's claim for breach of contract, in the Arbitration and this action, alleges that Gray "breached the December 28 Agreement by rejecting YCI's tender of the first payment for the shares and by refusing to tender his shares to YCI." (Arbitration Countercl. ¶ 45; Litigation Countercl. ¶ 42.) YCI's second claim for declaratory judgment in the Arbitration (first claim for declaratory judgment in this action) seeks a declaration requiring Gray "to tender his shares to YCI in exchange for their book value" under the December 28 Agreement. (Arbitration Countercl. ¶ 49; Litigation Countercl. ¶ 46.)

18.     By letter dated February 5, 2018, Gray, through his counsel, demanded that YCI advance his reasonable expenses incurred in defending against YCI's counterclaims in both this action and the Arbitration, pursuant to Article X of the Amended and Restated Bylaws of Yale Carolinas, Inc., effective as of April 15, 1991 (the "Bylaws"). (Scott Aff. Ex. A, at 1–2, ECF No. 80.1 ["Demand"]; Scott Aff. Ex. B, at art. X, §§ 1–2 ["Bylaws"].)

19. Article X of YCI's Bylaws lays out the indemnification and advancement rights of directors, officers, employees, and agents of YCI. Article X, Section 1 defines the scope of the indemnification right and provides, in pertinent part, that:

> [a]ny person who at any time serves or has served as a director, officer, agent or employee of the corporation . . . shall have a right to be indemnified by the corporation to the fullest extent permitted by law against (a) reasonable expenses, including reasonable attorneys' fees, actually incurred by him in connection with any threatened, pending or completed action, suit or proceeding (and any appeal thereof), whether civil, criminal, administrative, investigative or arbitrative, and whether or not brought by or on behalf of the corporation, seeking to hold him liable by reason of the fact that he is or was acting in such capacity, and (b) reasonable payments made by him in satisfaction of any judgment, money decree, fine, . . . penalty or settlement for which he may have become liable in any such action, suit or proceeding.

(Bylaws art. X, § 1.)

20. Article X, Section 2 concerns advance payment of fees incurred by a person within the scope of Section 1 and provides that:

> [e]xpenses incurred by such person shall be paid in advance of the final disposition of such investigation, action, suit or proceeding upon receipt of an undertaking by or on behalf of such person to repay such amount unless it shall ultimately be determined that he is entitled to be indemnified by the corporation.

(Bylaws art. X, § 2.)

21. Pursuant to Article X, Section 2 of the Bylaws, and as a part of his February 5, 2018 communication, Gray provided a written undertaking, promising to "repay the amount that he is paid in advance of the final disposition of the [counterclaims in this action and the Arbitration] unless it is ultimately determined that he is entitled to be indemnified" by YCI. (Demand 2; *see* Bylaws art. X, § 2.)

22. By letter dated February 12, 2018, Scott responded on behalf of the YCI Board, denying Gray's Demand. (Scott Aff. Ex. C ["Demand Denial"].) YCI asserted three bases for the denial. First, Scott claimed that YCI had determined that the counterclaims related to the December 28 Agreement do not arise out of Gray's status as a former officer and director of YCI but, rather, arise out of his status as a shareholder of YCI. (Demand Denial 1.) Accordingly, YCI concluded these are not claims for which Gray may be indemnified under the Bylaws. (Demand Denial 1.)

23. Second, Scott advised Gray that YCI denied his request for advancement because YCI brought the counterclaims, which it contends may be compulsory, "only in response to the litigation [Gray] initiated." (Demand Denial 2.) YCI concluded that its counterclaims "are not an 'action, suit or proceeding' for which the board intended, or North Carolina law allows, advancement of fees." (Demand Denial 2 (quoting Bylaws art. X, §§ 1, 2).)

24. Finally, Scott claimed that, because the Bylaws provide for indemnification "to the fullest extent permitted by law[,]" YCI determined it could not indemnify Gray, pursuant to N.C. Gen. Stat. § 55-8-57(a), for "activities which were at the time taken known or believed by him to be clearly in conflict with the best interest of the corporation." (Demand Denial 1 (quoting Bylaws art. X, § 1; N.C. Gen. Stat. § 55-8-57(a)).) Having concluded that Gray "knew what he was doing, both when he secretly raised his compensation and also when he insulted [HYG,]" YCI determined that Gray's alleged conduct makes him ineligible for indemnification. (Demand Denial 1–2.) YCI then concluded that the same reasoning applies to advancement, thus

"prohibit[ing] [YCI] from advancing fees to [Gray] to defend such actions." (Demand Denial 2.)

25. Nearly three months after receiving YCI's denial letter, on May 2, 2018, Gray filed a motion to supplement his Amended Complaint to add, *inter alia*, a claim for advancement (the "Motion to Supplement"). (ECF No. 73.) Defendants opposed the Motion to Supplement, and briefing ensued. (*See* ECF Nos. 79, 80, 82, 83.)

26. Following Defendants' withdrawal of their opposition to the Motion to Supplement on August 2, 2018 (ECF No. 91), the Court entered an order on August 2, 2018 granting the Motion to Supplement (the "Order"). (Order Following Stipulations & Extending Case Management Deadlines ¶ 6(B), ECF No. 93 ["Order"].) The Order also stayed YCI's counterclaims in this action pending a resolution of the nearly identical counterclaims in the Arbitration. (Order ¶ 6(A).) The Arbitration hearing in which the counterclaims will be decided was scheduled to take place from November 7 to November 9, 2018.

27. Gray filed his Supplemental Amended Complaint on August 3, 2018, asserting a claim for advancement. (Am. Compl. 55–56.) Gray styles his claim for advancement as one for "Breach of Bylaws" against all Defendants. (Am. Compl. 55.) Gray alleges that, under the Bylaws, he is entitled to mandatory advancement of reasonable expenses, including attorneys' fees, incurred in defending against the counterclaims that arise out of his alleged conduct "in his capacity as an employee, officer and director" of YCI. (Am. Compl. ¶¶ 130–31.) He alleges that YCI has violated the Bylaws by refusing to advance his reasonable expenses, including

reasonable attorneys' fees. (Am. Compl. ¶ 134.) Defendants deny the allegations related to Gray's claim for advancement, except that Defendants admit that "YCI's counterclaims against Gray . . . arise from his misconduct as a shareholder, employee, officer and director of YCI." (Answer ¶¶ 131–36.)

28. As of October 15, 2018, Gray had incurred [REDACTED] in legal fees in defending against YCI's counterclaims in this action and the Arbitration. (Watkins Aff. ¶ 14, ECF No. 116.) [REDACTED]. (Gray Aff. ¶¶ 11, 15, ECF No. 117.) YCI's refusal to advance Gray's defense costs has prevented Gray "from taking a more aggressive approach toward the use of more costly expert witnesses." (Gray Aff. ¶ 16.)

29. Gray filed the Motion on August 15, 2018, almost two weeks after filing his Supplemental Amended Complaint. The Motion asks the Court to enter a preliminary injunction ordering Defendants to advance Gray his reasonable expenses already incurred in defending against the counterclaims in this action and the Arbitration and to continue to pay such fees until a final disposition of the counterclaims in both proceedings. (Mot. 1–2.)

30. Defendants filed their brief in opposition to the Motion on September 15, 2018, and Gray elected to forgo filing a reply brief in support. The Court held a hearing on the Motion on October 3, 2018 by video conference in which counsel for all parties participated.

31. Following the hearing, on October 5, 2018, the Court entered an order allowing Gray and Defendants each to file opening supplemental briefs by October

15, 2018 and response supplemental briefs by October 22, 2018. (ECF No. 112.) Gray and Defendants filed briefs on those dates accordingly.

32. The Motion is now ripe for resolution.

## II. CONCLUSIONS OF LAW

33. Under Rule 65 of the North Carolina Rules of Civil Procedure ("Rule(s)"), the Court has discretion to issue a preliminary injunction. *See* N.C. Gen. Stat. § 1A-1, Rule 65(a)–(b) cmt. "The purpose of a preliminary injunction is ordinarily to preserve the *status quo* pending trial on the merits." *A.E.P. Indus., Inc. v. McClure*, 308 N.C. 393, 400, 302 S.E.2d 754, 759 (1983) (citation and quotation marks omitted). The issuance of a preliminary injunction, "is a matter of discretion to be exercised by the hearing judge after a careful balancing of the equities." *State ex rel. Edminsten v. Fayetteville St. Christian Sch.*, 299 N.C. 351, 357, 261 S.E.2d 908, 913 (1980).

34. A preliminary injunction is appropriate only where "a plaintiff is able to show a likelihood of success on the merits of his case" and "is likely to sustain irreparable loss in the absence of an injunction, or if, in the opinion of the Court, issuance is necessary for the protection of a plaintiff's rights during the course of litigation." *A.E.P. Indus.*, 308 N.C. at 401, 302 S.E.2d at 759–60 (emphasis omitted) (citations and quotation marks omitted).

35. "The law recognizes a distinction, however, between prohibitory and mandatory injunctions." *Auto. Dealer Res., Inc. v. Occidental Life Ins. Co.*, 15 N.C. App. 634, 639, 190 S.E.2d 729, 732 (1972). "A prohibitory injunction seeks to preserve the status quo, until the rights of the parties can be determined, by restraining the

party enjoined from doing particular acts." *Id.* (citing *Clinard v. Lambeth*, 234 N.C. 410, 418, 67 S.E.2d 452, 458 (1951)). In contrast, "[a] mandatory injunction is intended to restore a status quo and to that end requires a party to perform a positive act." *Id.* A mandatory injunction "will ordinarily be granted only where the injury is immediate, pressing, irreparable, and clearly established." *Id.* (citing *State Highway & Pub. Works Comm'n. v. Brown*, 238 N.C. 293, 296, 77 S.E.2d 483, 782 (1953)). "[T]he court has jurisdiction to issue a preliminary mandatory injunction where the case is urgent and the right is clear[.]" *Id.* (citation and quotation marks omitted).

36. Here, YCI has denied Gray's Demand and is not currently advancing Gray the expenses incurred in defending against YCI's counterclaims. (*See* Demand Denial 2.) Gray seeks an order from the Court requiring YCI (1) to pay Gray "any and all reasonable expenses (including reasonable attorneys' fees) incurred" in defending against the counterclaims, and (2) to "continue to promptly pay all reasonable expenses (including reasonable attorneys' fees) until the entry of a final and complete judgment" on the counterclaims. (Mot. 1–2.) Accordingly, Gray asks the Court to order YCI to perform a positive act that would not preserve the status quo but, rather, would restore it. *See Auto. Dealer Res.*, 15 N.C. App. at 639, 190 S.E.2d at 732. Therefore, the Court concludes that the more exacting standard applicable to mandatory injunctions applies to the Motion.

37. Thus, as to the first preliminary injunction requirement, Gray must demonstrate that he has a clear right to advancement. *See id.* As to the second requirement, Gray must show that he has "no adequate remedy at law and [that]

irreparable harm will result if the injunction is not granted." *Vest v. Easley*, 145 N.C. App. 70, 76, 549 S.E.2d 568, 574 (2001). In addition to irreparability, the harm must be "immediate, pressing, . . . and clearly established." *Auto. Dealer Res.*, 15 N.C. App. at 639, 190 S.E.2d at 732.

38. "North Carolina courts have held that in assessing the . . . preliminary injunction factors, the trial judge 'should engage in a balancing process, weighing potential harm to the plaintiff if the injunction is not issued against the potential harm to the defendant if injunctive relief is granted.'" *Nat'l Surgery Ctr. Holdings, Inc. v. Surgical Inst. of Viewmont, LLC*, 2016 NCBC LEXIS 41, at *8 (N.C. Super. Ct. May 12, 2016) (quoting *Williams v. Greene*, 36 N.C. App. 80, 86, 243 S.E.2d 156, 160 (1978)).

39. The Court has carefully weighed the factual averments made by Gray and Defendants and the records, evidence, and documents provided to the Court in order to determine whether Gray has demonstrated entitlement to a preliminary mandatory injunction.

### A. Gray Has Demonstrated a Likelihood of Success on the Merits

40. The Court's initial inquiry on Gray's Motion is whether he has shown a clear right to advancement and, thus, a likelihood of success on the merits of his claim for the same. *See A.E.P. Indus.*, 308 N.C. at 401, 302 S.E.2d at 759–60; *Auto. Dealer Res.*, 15 N.C. App. at 639, 190 S.E.2d at 732.

**1. Indemnification and Advancement Under North Carolina Law and YCI's Bylaws**

41. By statute, a North Carolina corporation may, and in some instances must, indemnify its current and former officers and directors made a party to a proceeding because of their status as an officer or director. *See* N.C. Gen. Stat. §§ 55-8-51, 55-8-52, 55-8-56.

> [A] corporation may indemnify an individual made a party to a proceeding because he is or was a director against liability incurred in the proceeding if: (1) [h]e conducted himself in good faith; and (2) [h]e reasonably believed (i) in the case of conduct in his official capacity with the corporation, that his conduct was in its best interest; and (ii) in all other cases, that his conduct was at least not opposed to its best interests[. . . .]

*Id.* § 55-8-51(a). However, a corporation may not indemnify a director under section 55-8-51(a) "[i]n connection with a proceeding by or in the right of the corporation in which the director was adjudged liable to the corporation" or "[i]n connection with any other proceeding charging improper benefit to him, whether or not involving action in his official capacity, in which he was adjudged liable on the basis that personal benefit was improperly received by him." *Id.* § 55-8-51(d).

42. Additionally, a director has a mandatory right to indemnification, unless the corporation's articles of incorporation provide otherwise, where the director "was wholly successful, on the merits or otherwise, in the defense of any proceeding to which he was a party because he is or was a director of the corporation against reasonable expenses incurred by him in connection with the proceeding." *Id.* § 55-8-52.

43.     As a corollary to indemnification, North Carolina statutes provide for permissive advancement.

> Expenses incurred by a director in defending a proceeding **may be paid** by the corporation **in advance of the final disposition of such proceeding** as authorized by the board of directors in the specific case or as authorized or required under any provision in the articles of incorporation or bylaws . . . upon receipt of an undertaking by or on behalf of the director to repay such amount unless it shall ultimately be determined that he is entitled to be indemnified by the corporation against such expenses.

*Id.* § 55-8-53 (emphasis added).

44.     Section 55-8-56 extends the mandatory indemnification and permissive advancement rights of directors of a North Carolina corporation to officers, employees, and agents of the corporation. *Id.* § 55-8-56 ("Unless a corporation's articles of incorporation provide otherwise: (1) [a]n officer of the corporation is entitled to mandatory indemnification under [section 55-8-52] . . . to the same extent as a director; [and] (2) [t]he corporation may indemnify and advance expenses . . . to an officer, employee, or agent of the corporation to the same extent as to a director[.]")

45.     Furthermore, a corporation may provide its directors, officers, and employees with rights to indemnification and advancement in its articles of incorporation or by-laws. *Id.* §§ 55-8-56(3), 55-8-57(a). There are, however, limits on the extent to which a corporation may indemnify its directors, officers, and employees in its by-laws. Specifically, "a corporation may not indemnify or agree to indemnify a person [in its by-laws] against liability or expenses he may incur on account of his activities which were at the time taken known or believed by him to be clearly in conflict with the bests interests of the corporation." *Id.* § 55-8-57(a).

46. North Carolina's statutory scheme for indemnification and advancement serves to promote this State's "public policy . . . [of] enabl[ing] corporations organized [in North Carolina] to attract and maintain responsible, qualified directors, officers, employees and agents, and, to that end, to permit corporations organized [in North Carolina] to allocate the risk of personal liability of directors, officers, employees and agents through indemnification[.]" *Id.* § 55-8-50(a).

47. Under the auspices of this statutory scheme, YCI's Bylaws provide, in certain circumstances, for both mandatory indemnification and mandatory advancement. Article X, Section 1 of the Bylaws defines the class of individuals who have a right to indemnification under the Bylaws and the scope of that right. The right to indemnification extends to: (1) "[a]ny person who at any time serves or has served as a director, officer, agent or employee of the corporation"; (2) who incurs "reasonable expenses, including attorneys' fees"; (3) "in connection with any threatened, pending or completed action, suit or proceeding"; (4) "whether civil, criminal, administrative, investigative or arbitrative"; (5) "whether or not brought by or on behalf of the corporation"; and (6) where the proceedings seek "to hold [the director or officer] liable by reason of the fact that he is or was acting in such capacity[.]" (Bylaws art X, § 1.) Any person satisfying all of these criteria "shall have a right to be indemnified by the corporation to the fullest extent permitted by law." (Bylaws art. X, § 1.)

48. Article X, Section 2 of the Bylaws provides that:

> [e]xpenses incurred by such person **shall** be paid in advance of the final disposition of such investigation, action, suit or proceeding upon receipt

of an undertaking by or on behalf of such person to repay such amount unless it shall ultimately be determined that he is entitled to be indemnified by the corporation.

(Bylaws art. X, § 2 (emphasis added).)

### 2. Interpretation of YCI's Bylaws

49. The parties' dispute over Gray's entitlement to advancement derives primarily from their competing interpretations of the Bylaws' indemnification and advancement provisions. "A corporation's by-laws are a contract between the corporation and its members." *Dillard/Goldsboro Alumni & Friends, Inc. v. Smith*, 2016 NCBC LEXIS 34, at *34 (N.C. Super. Ct. Apr. 28, 2016) (citing *Crider v. Jones Island Club, Inc.*, 147 N.C. App. 262, 267, 54 S.E.2d 863, 866 (2001)); *see also Hilco Transp., Inc. v. Atkins*, 2016 NCBC LEXIS 5, at *28 (N.C. Super. Ct. 2016) ("A corporation's bylaws are treated like a contract."). Therefore, the Court must interpret these provisions of the Bylaws following well-settled rules of contract interpretation to determine whether Gray has shown a likelihood of success on his claim for advancement.

50. "[T]he various terms of the [contract] are to be harmoniously construed and, if possible, every word and every provision is to be given effect." *In re Foreclosure of a Deed of Trust*, 210 N.C. App. 409, 415, 708 S.E.2d 174, 178 (2011) (second alteration in original) (citation and quotation marks omitted). The Court must "interpret a contract according to the intent of the parties to the contract, unless such intent is contrary to law." *Buetel v. Lumber Mut. Ins. Co.*, 134 N.C. App. 626, 631, 518 S.E.2d 205, 209 (1999). "If the plain language of a contract is clear, the intention of the

parties is inferred from the words of the contract." *Walton v. City of Raleigh*, 342 N.C. 879, 881, 467 S.E.2d 410, 411 (1996).

51. As an initial matter, the parties do not dispute that the Bylaws are a valid and binding contract. Nor do they dispute that the language "shall have a right to be indemnified" and "shall be paid in advance" renders the indemnification and advancement rights under the Bylaws mandatory if other required conditions are met. (Bylaws art. X, §§ 1, 2.) Therefore, the Court concludes that the Bylaws constitute a valid contract and provide for mandatory indemnification and advancement rights to persons covered under Article X, Section 1. *See Internet E., Inc. v. Duro Commc'ns, Inc.*, 146 N.C. App. 401, 405–06, 553 S.E.2d 84, 87 (2001) (holding that "shall" renders a provision of a contract mandatory).

52. According to Gray, his entitlement to advancement under the Bylaws is clear and straightforward: he is a former officer and director of YCI now defending claims brought against him by YCI in both this action and the Arbitration; the claims seek to hold him liable for his conduct in his capacities as officer and director; and in defending against these claims, he has actually incurred, and continues to incur, expenses. Therefore, Gray contends he satisfies the criteria set forth in Article X, Section 1 of the Bylaws. (*See* Pl.'s Mem. Supp. Pl.'s Mot. for Prelim. Inj. 8–10, ECF No. 96 ["Pl.'s Mem. Supp."].) Further, Gray argues, these expenses must be paid by YCI in advance of a final disposition of the claims upon his providing an "undertaking,"[4] which he has done. (Pl.'s Mem. Supp.10.) Because YCI has refused

---

[4] The term "undertaking" refers to the statutory requirement that a party seeking advancement of defense fees must sign a writing committing to pay the advanced funds back

to advance Gray his reasonable expenses, Gray contends YCI has breached the Bylaws. (Pl.'s Mem. Supp. 10.)

53. Defendants respond that Gray is not entitled to advancement for three reasons. First, Defendants contend that the nature of Gray's conduct—that he took action that he knew or believed not to be in the best interest of the corporation—eliminates his entitlement to indemnification. (*See* Defs.' Br. Opp'n to Pl.'s Mot. for Prelim. Inj. 11–12, ECF No. 106 ["Defs.' Br. Opp'n"]; Defs.' Suppl. Br. Opp'n to Pl.'s Mot for Prelim. Inj. 4–9, ECF No. 113 ["Defs.' First Suppl. Br."]; Defs.' Second Suppl. Br. Opp'n to Pl.'s Mot. for Prelim. Inj. 3–8, ECF No. 121 ["Defs.' Second Suppl. Br."].) Because Defendants contend that the Bylaws condition advancement on an officer or director's eligibility for indemnification, Gray, they argue, is not entitled to advancement. (*See* Defs.' Second Suppl. Br. 8–9.) Second, Defendants contend that not all of the counterclaims in this litigation or the Arbitration were brought by YCI "by reason of the fact" that Gray served as an officer and director of YCI. (Defs.' Br. Opp'n 9–10.) Third, YCI contends that, in defending against counterclaims, Gray is not defending against an "action, suit or proceeding" as YCI intended the applicable language in its Bylaws to be interpreted. (*See* Defs.' Br. Opp'n 11, 13–14; Defs.' First Suppl. Br. 3–4.)

54. The Court addresses each of these arguments in turn.

---

to the corporation if it is ultimately determined that the party obtaining advancement is not entitled to indemnity. *See* N.C. Gen. Stat. § 55-8-53.

### a. The Relationship Between Indemnification and Advancement

55. The key dispute concerning Gray's right to advancement concerns the parties' competing conceptions of the relationship between indemnification and advancement under the Bylaws.

56. In denying Gray's Demand, YCI stated that, because the Bylaws mandate advancement "to the fullest extent permitted by law[,]" YCI could not indemnify Gray, pursuant to section 55-8-57(a), for "activities which were at the time taken known or believed by him to be clearly in conflict with the best interest of the corporation." (Demand Denial 1 (quoting Bylaws art. X, § 1; N.C. Gen. Stat. § 55-8-57(a)).) Having concluded that Gray "knew what he was doing, both when he secretly raised his compensation and also when he insulted [HYG,]" YCI determined that Gray's alleged conduct makes him ineligible for indemnification. (Demand Denial 1–2.) YCI then concluded that the same reasoning applies to advancement and "also prohibits [YCI] from advancing fees to [Gray] to defend such actions." (Demand Denial 2.)

57. The case law on indemnification, advancement, and the relationship between the two is underdeveloped in North Carolina. Delaware courts, however, have addressed these issues in numerous decisions. North Carolina courts frequently look to Delaware law for guidance on legal issues such as those in dispute here. *See Ehrenhaus v. Baker*, 216 N.C. App. 59, 85, 717 S.E.2d 9, 27 (2011); *Ehrenhaus v. Baker*, 2008 NCBC LEXIS 21, at *27 n.19 (N.C. Super. Ct. Dec. 5, 2008).

58. The Delaware Supreme Court has held that "[a]lthough the right[s] to indemnification and advancement are correlative, they are separate and distinct legal actions." *Homestore, Inc. v. Tafeen*, 888 A.2d 204, 212 (Del. 2005). Generally, "[t]he right to advancement is not dependent on the right to indemnification." *Id.* (citing *Citadel Holding Corp. v. Roven*, 603 A.2d 818, 822 (Del. 1992)). As the Delaware Court of Chancery has explained:

> [i]ndemnification is the right to be reimbursed for all out of pocket expenses and losses caused by an underlying claim. The right is typically subject to a requirement that the indemnitee have acted in good faith and in a manner that he reasonably believed was in the best interests of the company. As a result, an indemnification dispute generally cannot be resolved until after the merits of the underlying controversy are decided because the good faith standard requires a factual inquiry into the events that gave rise to the lawsuit.

*Majkowski v. Am. Imaging Mgmt. Servs., LLC*, 913 A.2d 572, 586 (Del. Ch. 2006) (internal citations omitted).

59. Advancement, however, is in certain respects narrower than indemnification and in certain respects broader:

> [a]dvancement, by contrast, is a right whereby a potential indemnitee has the ability to force the company to pay his litigation expense as they are incurred regardless of whether he will ultimately be entitled to indemnification. Advancement is typically not conditioned on a finding that the party seeking advancement has met any standard of conduct. A grant of advancement rights is essentially a decision to advance credit to the company's officers and directors because the officer or director must repay all sums advanced to him if it is later determined that he is not entitled to be indemnified.

*Id.* at 586–87 (internal citations omitted).

60. The plain language of the Bylaws' advancement provision is in accord with the Delaware courts' conception of indemnification and advancement as related but

importantly distinct rights. Article X, Section 2 mentions indemnification only in the context of providing an undertaking, the receipt of which is clearly a condition for advancement. (Bylaws art. X, § 2 (conditioning advancement "upon receipt of an undertaking by or on behalf of such person to repay such amount *unless it shall ultimately be determined that he is entitled to be indemnified by the corporation.*" (emphasis added)).) The use of "ultimately be determined that he is entitled to be indemnified" suggests that the determination must be made after the merits of the claims for which a person seeks advancement are decided. Factors relevant to that determination include whether the director or officer in question knew or believed his actions "to be clearly in conflict with the best interest of the corporation." N.C. Gen. Stat. § 55-8-57(a). Under Delaware law, these state-of-mind factors "require[] a factual inquiry into the events that gave rise to the lawsuit[,]" *Majkowski*, 913 A.2d at 586–87 (internal citations omitted), which will occur at the final stage of the litigation.

61.    The Bylaws' advancement provision mandates that a covered person's litigation expenses are to be pre-paid by the corporation prior to "the final disposition" of the action. (Bylaws art. X, § 2.) Conditioning the right to advancement on the consideration of factors relevant to determining a person's ultimate entitlement to indemnification conflates the *possibility* of indemnity with ultimate *entitlement* to indemnity and improperly blurs the line between the distinct rights of indemnification and advancement. *See Majkowski*, 913 A.2d at 586–87.

62. Applying ordinary rules of contract interpretation, the Bylaws' advancement provision cannot be read to condition the right to advancement on a predetermination of a person's ultimate entitlement to indemnification. Defendants' contrary interpretation of the Bylaws improperly conditions a person's entitlement to advancement on a finding that the person is also entitled to indemnification.

63. Furthermore, Defendants' interpretation leads to untenable consequences. If YCI may determine in advance of a final disposition that the person seeking advancement will not ultimately be entitled to indemnity, it would render the advancement provision's undertaking requirement meaningless. As Gray points out, under such an interpretation, "there would never be any uncertainty as to whether advanced expenses were subject to indemnification because this determination already would have occurred, and there would never be a need for an undertaking." (Pl.'s Suppl. Mem. Supp. Pl.'s Mot. for Prelim. Inj. 13, ECF No. 115 ["Pl.'s First Suppl. Br."].) The Court declines to adopt an interpretation of the Bylaws that would render key provisions void. *See In re Foreclosure of a Deed of Trust*, 210 N.C. App. at 415, 708 S.E.2d at 178 ("[T]he various terms of the [contract] are to be harmoniously construed and, if possible, every word and every provision is to be given effect." (second alteration in original) (citation and internal quotation marks omitted)).

64. Defendants' interpretation also appears to be inconsistent with North Carolina's mandatory indemnification statute. N.C. Gen. Stat. § 55-8-52 provides that a director has a mandatory right to indemnification, irrespective of indemnification rights provided for in a corporation's by-laws, where the director "was

wholly successful, on the merits or otherwise, in the defense of any proceeding to which he was a party because he is or was a director of the corporation[.]" Defendants' interpretation of the Bylaws allows for the possibility that YCI may predetermine, on the basis of its allegations against an adverse director, that the director is not entitled to indemnification; thereby deny that director advancement prior to a final disposition of the action; and, yet, if the director is wholly successful, YCI would be required to indemnify him for the very expenses YCI refused to advance on the basis of the director's purported lack of entitlement to indemnity. The Court cannot endorse an interpretation of the Bylaws that allows for such an untenable result. The Court must "interpret a contract according to the intent of the parties to the contract, unless such intent is contrary to law." *Buetel*, 134 N.C. App. at 631, 518 S.E.2d at 209.

65.     Accordingly, the Court rejects Defendants' interpretation of the Bylaws and concludes that the advancement provision does not condition advancement on or allow for a determination by YCI that the person seeking advancement is ultimately entitled to indemnification.

66.     This is not to say, however, that the right to advancement under the Bylaws is completely divorced from the right to indemnification. Specifically, the Bylaws require that the person requesting advancement must at least have the possibility of indemnification. Article X, Section 1 defines those individuals as "[a]ny person who at any time serves or has served as a director officer, agent or employee of the corporation" and who incurs "reasonable expenses, including reasonable attorneys'

fees, . . . in connection with any . . . action, suit or proceeding . . . seeking to hold [that person] liable by reason of the fact that he is or was acting in such capacity[.]" (Bylaws art. X, § 1.)

67. These requirements place clear limits on the right to indemnification, and "[i]t would make little sense to construe the [Bylaws'] advancement provision to provide advancement for claims for which" persons could not possibly be indemnified. *NAMS Holdings, LLC v. Reece*, 2018 NCBC LEXIS 32, at \*23 (N.C. Super. Ct. Apr. 16, 2018).[5] Such claims include those which are not brought "by reason of the fact" that the person was acting in their official, corporate capacity. *See, e.g.*, *Charney v. Am. Apparel, Inc.*, 2015 Del. Ch. LEXIS 238, at \*47–56 (Del. Ch. Sept. 11, 2015); *Bernstein v. TractManager, Inc.*, 953 A.2d 1003, 1016–17 (Del. Ch. 2007); *Weaver v. ZeniMax Media, Inc.*, 2004 Del. Ch. LEXIS 10, at \*12–18 (Del. Ch. Jan. 30, 2004); *see also infra* Part II.A.2.b.

68. The Court thus concludes that the Bylaws provide a mandatory right to advancement of reasonable expenses, including reasonable attorneys' fees, to (1) any person who is a current or former director, officer, employee, or agent of YCI; (2) who incurs such expenses in connection with any pending action, suit, or proceeding; (3) which action, suit, or proceeding seeks to hold the person liable by reason of the fact that he is or was acting in his capacity as a director, officer, employee, or agent; and (4) who provides an undertaking to repay such advanced expenses unless it is

---

[5] This Court, in *NAMS Holdings*, considered a party's right to advancement under Delaware law in a Rule 12(b)(6) context. *NAMS Holdings*, 2018 NCBC LEXIS 32, at \*5–7.

ultimately determined following a final disposition of the action, suit, or proceeding that he is not entitled to be indemnified by YCI.

### b. "By Reason of the Fact"

69. As an additional ground for denying Gray's Demand, YCI noted that at least some of its counterclaims were brought based on Gray's breach of the December 28 Agreement to sell his shares for book value. (Demand Denial 1.) YCI determined, and argues here, that such claims arise, not by reason of the fact that Gray was an officer or director of YCI, but rather by reason of the fact that Gray is a shareholder of YCI. (Demand Denial 1.)

70. Gray does not appear to dispute that the claims relating to his alleged breach of the December 28 Agreement were not brought by reason of the fact that he was an officer or director of YCI. (*See* Pl.'s Mem. Supp. 14–16.) Nor does it appear that Defendants challenge Gray's contention that YCI's remaining counterclaims, related to his allegedly unauthorized increases in compensation and his insults of HYG's President, were brought by reason of the fact that Gray was an officer and director of YCI. (Defs.' Br. Opp'n 9; *see also* Answer ¶ 132.)

71. The Bylaws limit the possibility for indemnification of expenses, and correspondingly the advancement of expenses, to those claims brought "by reason of the fact" that an officer or director "was acting in such capacity[.]" (Bylaws art. X, § 1.) The Bylaws' "by reason of the fact" language is also found in Delaware's indemnification statute. *See* Del. Code Ann. tit. 8, § 145(a)–(b). Accordingly, the

Court finds Delaware law construing the "by reason of the fact" requirement instructive for interpreting this identical language in the Bylaws.

72. "Delaware courts have construed the 'by reason of the fact' requirement broadly but not 'so broadly as to encompass every suit brought against an officer or director.'" *NAMS Holdings*, 2018 NCBC LEXIS 32, at *8 (quoting *Weaver*, 2004 Del. Ch. LEXIS 10, at *9–10). "[I]n order for one to be deemed a party to a proceeding 'by reason of the fact' of one's corporate position, there must be a 'causal connection or nexus' between the underlying proceedings and 'the corporate function or "official [corporate] capacity."'" *Homestore*, 888 A.2d at 213 (second alteration in original) (quoting *Perconti v. Thornton Oil Corp.*, 2002 Del. Ch. LEXIS 51, at *12–21 (Del. Ch. May 3, 2002)). "The requisite connection is established 'if the corporate powers were used or necessary for the commission of the alleged misconduct.'" *Paolino v. Mace Sec. Int'l, Inc.*, 985 A.2d 392, 406 (Del. Ch. 2009) (quoting *Bernstein, Inc.*, 953 A.2d at 1011). "Delaware courts typically determine whether there is a 'causal connection' by 'examining the pleadings in the underlying litigation . . . .'" *Charney*, 2015 Del. Ch. LEXIS 238, at *48 (omission in original) (quoting *Holley v. Nipro Diagnostics, Inc.*, 2014 Del. Ch. LEXIS 268, at *23 (Del. Ch. Dec. 23, 2014)).

73. YCI alleges that the December 28 Agreement obligates Gray to sell his shares to YCI for a price determined under the Buy/Sell Agreement—book value. (Arbitration Countercl. ¶ 30; Litigation Countercl. ¶ 30.) YCI's claim for breach of contract, in the Arbitration and this action, alleges that Gray "breached the December 28 Agreement by rejecting YCI's tender of the first payment for the shares and by

refusing to tender his shares to YCI." (Arbitration Countercl. ¶ 45; Litigation Countercl. ¶ 42.) YCI's second claim for declaratory judgment in the Arbitration (first claim for declaratory judgment in this action) seeks a declaration requiring Gray "to tender his shares to YCI in exchange for their book value" under the December 28 Agreement. (Arbitration Countercl. ¶ 49; Litigation Countercl. ¶ 46.) As alleged, Gray's refusal to sell his shares or accept YCI's tender of the first payment for the shares implicates his status as a shareholder of YCI alone and lacks a causal connection to his status as an officer, director, or employee of YCI. *See Homestore*, 888 A.2d at 213.

74. Therefore, the Court concludes that the counterclaims arising from Gray's alleged breach of the December 28 Agreement, as alleged in both this action and the Arbitration, are not brought by reason of the fact that Gray was an officer or director of YCI. Accordingly, Gray is not eligible for advancement or indemnification for these claims.

75. YCI's compensation-related counterclaims and those related to Gray's alleged conduct toward HYG, however, implicate Gray's role as an officer, director, and employee of YCI. The allegations underlying YCI's counterclaims for conversion, fraud, breach of officer's and director's duties, and civil remedy for larceny and embezzlement all center on Gray's alleged conduct as President in secretly increasing his compensation and/or jeopardizing YCI's relationship with HYG. (Arbitration Countercl. ¶¶ 51, 55–56, 59–60, 64–66, 69–72; Litigation Countercl. ¶¶ 51, 55–56, 59–60, 64–66, 69–72.) As alleged, Gray's "corporate powers were used or [were]

necessary for the commission of the alleged misconduct[,]" *Paolino*, 985 A.2d at 406 (citation and quotation marks omitted), and the requisite causal connection exists between these counterclaims and Gray's corporate capacity.

76. YCI's first claim for declaratory judgment in the Arbitration (second claim for declaratory judgment in this action) seeks a declaration that YCI's termination of Gray was "for cause" under the Buy/Sell Agreement and an order directing Gray "to offer all of his shares to YCI at book value" under the Buy/Sell Agreement. (Arbitration Countercl. ¶ 40; Litigation Countercl. ¶ 49.) Although these counterclaims reference the Buy/Sell Agreement, which Gray entered into as a shareholder of YCI, the company seeks the declaration "[b]ased on the misconduct described above"—namely, the same conduct underlying YCI's claims for conversion, fraud, breach of officer's and director's duties, and civil remedy for larceny and embezzlement. (Arbitration Countercl. ¶ 40; Litigation Countercl. ¶ 49.) Because the Court has concluded those claims were brought by reason of Gray's corporate capacity, the Court also concludes that the requisite causal connection exists between YCI's claim for declaratory judgment that Gray was terminated for cause and Gray's corporate capacity.

77. Therefore, YCI's counterclaims in this action and in the Arbitration for conversion, fraud, breach of officer's and director's duties, and civil remedy for larceny and embezzlement, and its first claim for declaratory judgment in the Arbitration (second claim for declaratory judgment in this action) (the "Advanceable Counterclaims") are claims for which Gray is eligible for indemnification. Thus, he

has a right to advancement of reasonable expenses, including reasonable attorneys' fees, incurred in defending against these claims, but only these claims.

### c. YCI's Counterclaims Are an "Action, Suit or Proceeding" Under the Bylaws

78. Finally, YCI denied Gray's request for advancement because it brought the Advanceable Counterclaims, which it contends may be compulsory, "only in response to the litigation [Gray] initiated." (Demand Denial 2.) YCI concluded, accordingly, and argues here, that its Advanceable Counterclaims "are not an 'action, suit or proceeding' for which the board intended, or North Carolina law allows, advancement of fees." (Demand Denial 2.) In other words, Defendants contend that, even if advancement is not conditioned on Gray's ultimate entitlement to indemnification, his Demand was properly denied because he seeks advancement of expenses incurred in defending counterclaims.

79. Gray contends that, under neither the Bylaws nor North Carolina law, is advancement of expenses limited "only [to] first-filed claims, but not counterclaims." (Pl.'s Mem. Supp. 16.) He contends that the Bylaws are devoid of any language excluding counterclaims from an "action, suit or proceeding" in either Article X, Section 1 or Section 2. (Pl.'s Mem. Supp. 16 (quoting Bylaws art X, §§ 1, 2).)

80. The Court agrees with Gray and finds no support for Defendants' position in the Bylaws, in the decisions of our appellate courts, or in North Carolina's statutory scheme for indemnification and advancement in Chapter 55. The plain language of the Bylaws' indemnification provision provides for mandatory indemnification related to "*any* threatened, pending or completed action, suit or proceeding . . .

whether civil . . . or arbitrative, and *whether or not brought by or on behalf of the corporation, seeking to hold [an officer or director] liable* by reason of the fact that his is was acting in such capacity[.]"  (Bylaws art. X, § 1 (emphasis added).)  This expansive provision contains no language excluding counterclaims, compulsory or not, from the scope of the indemnification right.  Rather, the "action, suit or proceeding" simply must be one that "seek[s] to hold [an officer or director] liable by reason of the fact that he was acting in such capacity[.]"  (Bylaws art. X, § 1.)  YCI clearly seeks to hold Gray liable for the Advanceable Counterclaims, and the Advanceable Counterclaims were brought by reason of the fact that Gray served as an officer, director, and employee of the company.

81.    The language of the provision is clear, and the Court concludes—YCI's contentions regarding its intent notwithstanding—that the Advanceable Counterclaims constitute an "action, suit or proceeding" under the Bylaws' indemnification provision.  *See Walton*, 342 N.C. at 881, 467 S.E.2d at 411; *see also Paolino*, 985 A.2d at 399–401 (rejecting argument that plaintiff was not "defending" against company's counterclaims and holding that plaintiff was entitled to advancement of fees incurred in defending against counterclaims).

82.    The Bylaws' advancement provision simply refers back to the category of claims for which an officer and director has a right to indemnity.  (Bylaws art. X, § 2 ("Expenses incurred by such person shall be paid in advance of the final disposition of *such . . . action, suit or proceeding*[.]" (emphasis added)).)  Because the Court has concluded that the indemnification provision applies to counterclaims as well as first-

filed claims, the Court concludes that expenses incurred in defending against the Advanceable Counterclaims fall within the Bylaws' advancement and indemnification provisions.

*     *     *

83. In sum, the Court concludes that Gray has shown a likelihood of success on the merits of his claim for advancement and that his contractual "right [to advancement] is clear[.]" *Auto. Dealer Res.*, 15 N.C. App. at 639, 190 S.E.2d at 732. Specifically, the Court concludes that: (1) Gray has served as an officer, director, and employee of YCI; (2) Gray is defending against the Advanceable Counterclaims, by which YCI seeks to hold him liable by reason of the fact that he served in such capacities; (3) the Bylaws mandate the advancement of Gray's reasonable expenses incurred in defending against the Advanceable Counterclaims; and (4) Gray provided an undertaking to repay any advanced fees in the event he is ultimately determined not to be entitled to indemnification. Gray has, accordingly, satisfied all the requirements under the Bylaws to receive advancement, but YCI has denied him the advancement he is owed under the Bylaws. Therefore, Gray has satisfied the first requirement for the issuance of a preliminary mandatory injunction ordering that advancement be made.

## B. Gray Has Not Demonstrated Irreparable Harm

84. Even where a movant has shown a likelihood of success on the merits of the underlying claim, he is only "entitled to injunctive relief when there is no adequate remedy at law and irreparable harm will result if the injunction is not granted." *Vest,*

145 N.C. App. at 76, 549 S.E.2d at 574. Given the mandatory nature of the relief Gray seeks, he must show that the injury is "immediate, pressing, irreparable, and clearly established." *Auto. Dealer Res.*, 15 N.C. App. at 639, 190 S.E.2d at 732.

85. In the course of arguing and briefing the Motion, Gray has taken a variety of positions with respect to his showing of irreparable harm. At the hearing on the Motion, he argued that, in the context of a preliminary injunction to enforce advancement rights, he need not make a showing of irreparable harm, North Carolina's well-settled preliminary injunction standard notwithstanding. Defendants respond that advancement does not change the required analysis, and that Gray "must show an immediate, pressing, irreparable, and clearly established injury to entitle him" to a preliminary injunction ordering the payment of funds by YCI. (Defs.' First Suppl. Br. 9–10 (quoting *Auto. Dealer Res.*, 15 N.C. App. at 639, 190 S.E.2d at 732); *see* Defs.' Second Suppl. Br. 2.)

86. Gray does not cite to any North Carolina case applying North Carolina law holding that, in the context of a claim for advancement, the issuance of a preliminary injunction does not require a showing of irreparable harm. The omission of any such citation is for good reason—whether, and under what circumstances, a court should issue a preliminary injunction ordering a corporation to advance a plaintiff his or her reasonable expenses incurred in litigation appears to be an issue of first impression in North Carolina.

87. Delaware law is similarly underdeveloped in this area—again, for good reason. By Delaware statute, the Delaware Court of Chancery, unlike this Court, has

exclusive jurisdiction to hear all actions for advancement and "may summarily determine a corporation's obligation to advance expenses (including attorneys' fees)." Del. Code Ann. tit. 8, § 145(k). Accordingly, in Delaware, most disputes concerning advancement are decided either in separate, stand-alone proceedings and/or on summary judgment, not by means of a preliminary injunction. *See, e.g.*, *Holley*, 2014 Del. Ch. LEXIS 268, at *23; *Weaver*, 2004 Del. Ch. LEXIS 10, at *7–8, 30; *Morgan v. Grace*, 2003 Del. Ch. LEXIS 113, at *16 (Del. Ch. Oct. 29, 2003); *Reddy v. Elec. Data Sys. Corp.*, 2002 Del. Ch. LEXIS 69, at *30 (June 18, 2002); *Lipson v. Supercuts, Inc.*, 1996 Del. Ch. LEXIS 108, at *1, 8 (Del. Ch. Sept. 10, 1996). Questions of irreparable harm in the advancement context, therefore, rarely arise under Delaware law.

88.     In at least one case, however, the Delaware Court of Chancery discussed a claim for advancement on a preliminary injunction motion. *See Emerging Eur. Growth Fund, L.P. v. Figlus*, 2013 Del. Ch. LEXIS 80, at *1, 35–36 (Del. Ch. Mar. 28, 2013). In *Figlus*, the plaintiffs requested advancement along with their motion for a preliminary injunction to prevent the defendant from disclosing confidential information. *Id.* at 35. The court noted that "[w]ith regard to [p]laintiffs' request for advancement . . . there has been no showing of potential irreparable harm." *Id.* Rather, the court held that "the evidence adduced thus far demonstrates that Figlus could not mount his defense if [he was] forced to advance [p]laintiffs' attorneys' fees." *Id. Figlus* suggests that, even though Delaware has a specialized proceeding for hearing claims for advancement, when a movant seeks advancement by means of a

preliminary injunction, Delaware courts do not stray from the standard requirements for such an injunction, including a showing of irreparable harm.

89.     The Court concludes that corporate advancement does not require or authorize a departure from the well-settled jurisprudence of this State concerning the requirements for the grant of a preliminary injunction.  Although the law of North Carolina may not be well developed as to advancement, it is well developed on the proof elements necessary to obtain preliminary injunctive relief.  Those elements, particularly where the requested injunction is mandatory, include a requirement that the movant "clearly establish" that he will suffer immediate, pressing, and irreparable harm.  *Auto. Dealer Res.*, 15 N.C. App. at 638, 190 S.E.2d at 732.

90.     Turning then to Gray's evidence of irreparable harm, Gray first contends that the mere denial of his contractual right to advancement constitutes *per se* irreparable harm.  (Pl.'s First Suppl. Br. 14–15; Pl.'s Resp. Suppl. Mem. Supp. Pl.'s Mot. for Prelim. Inj. 6–7, ECF No. 123 ["Pl.'s Second Suppl. Br."].)

91.     Relying on authority from Delaware and elsewhere, Gray argues that the value of the right to advancement, in contrast to the right to indemnification, is forever lost if that right is not vindicated during the course of the litigation.  *See Tafeen v. Homestore, Inc.*, 2005 Del. Ch. LEXIS 77, at *8 (Del. Ch. May 26, 2005) ("[A]dvancement must be made promptly, otherwise its benefit is forever lost because the failure to advance fees affects the counsel the director may choose and litigation strategy that the executive or director will be able to afford."), *aff'd*, 886 A.2d 502 (Del. 2005); *see also Westar Energy, Inc. v. Lake*, 552 F.3d 1215, 1225 (10th Cir. 2009)

("If a corporation withholds advances, the right will be irretrievably lost at the conclusion of the litigation, because at that point the officer will only be entitled to indemnity."); *Roller Bearing Indus. v. Paul*, 2010 U.S. Dist. LEXIS 28935, at *19 (W.D. Ky. 2010) ("We conclude that [defendant] has adequately shown a probability of irreparable harm in the form of the loss of his contractual right to advancement."); *In re Worldcom, Inc. Sec. Litig.*, 354 F. Supp. 2d 455, 469 (S.D.N.Y. 2005) ("The failure to receive defense costs when they are incurred constitutes an immediate and direct injury." (citation and internal quotation marks omitted)).

92.     The Court is not persuaded by this non-binding authority that denial of advancement is *per se* irreparable harm sufficient to justify mandatory injunctive relief.  Under the Bylaws, the right to advancement is a contractual right to receive periodic payments prior to a certain date—the date of the final disposition of the claims for which the litigant is entitled to advancement.  The loss of that contractual right results, first, in the loss of money, and a request for advancement via a motion for preliminary injunction seeks the payment of money to remedy the loss.  Generally, our courts have held that where an injury may be compensated by the payment of monetary damages, the injury is not irreparable, and an injunction should not issue.  *See Bd. of Light & Water Comm'rs v. Parkwood Sanitary Dist.*, 49 N.C. App. 421, 424, 271 S.E.2d 402, 404 (1980) ("An injury is considered irreparable when money alone cannot compensate for it." (citation and quotation marks omitted)); *see also Crawford v. Univ. of N.C.*, 440 F. Supp. 1047, 1058 (M.D.N.C. 1977) ("A [mandatory] injunction should not work so as to give a party the full relief which he seeks on the merits,

especially when the order would require the payment of money."). Gray has not demonstrated why the Court should view an injunction ordering payments on a contract for advancement differently from the issuance of an injunction on any other contract for the periodic payment of money by a certain date, such as a lease or promissory note.

93. Furthermore, the contention that the advancement right "will be irretrievably lost at the conclusion of the litigation, because at that point the officer will only be entitled to indemnity[,]" *Westar Energy*, 552 F.3d at 1225, bears on whether a movant has an adequate remedy at law, not on irreparable harm. Although the lack of an adequate remedy at law is required to obtain equitable relief, the movant must also show irreparable harm. *See Vest*, 145 N.C. App. at 76, 549 S.E.2d a 574 ("A plaintiff is entitled to injunctive relief when there is no adequate remedy at law *and* irreparable harm will result if the injunction is not granted." (emphasis added)).

94. The Court concludes that the mere denial of advancement does not, in and of itself, constitute irreparable harm. The Court does not conclude, however, that the denial of advancement may never constitute irreparable harm. Rather, here, Gray must clearly establish that, as a consequence of a denial of the Motion, and, thus, his failure to receive advancement, he is likely to suffer an actual injury that is "immediate, pressing, [and] irreparable[.]" *Auto. Dealer Res.*, 15 N.C. App. at 639, 190 S.E.2d at 732.

95. Gray argues that he has, in fact, suffered, and will continue to suffer, actual irreparable injury because YCI's denial of advancement has affected his litigation strategy, and, absent advancement, he "lacks the funds to continue effectively defending himself." (Pl.'s First Suppl. Br. 15–16; *see* Pl.'s Second Suppl. Br. 7.) Defendants respond that Gray has failed to present evidence satisfying this standard, and, instead, the evidence and history of this action and the Arbitration show that Gray's defense of the Advanceable Counterclaims has not been hampered by YCI's denial of advancement. (Defs.' Br. Opp'n 14–16; Defs.' First Suppl. Br. 11–16; Defs.' Second Suppl. Br. 2–3.)

96. Gray, through the affidavit of his counsel, represents that, as of October 15, 2018, he had incurred a total of [REDACTED] in legal fees in defending against YCI's counterclaims. (Watkins Aff. ¶ 14.) The Court notes that the amount represented is for all counterclaims raised by YCI in this action and the Arbitration, and not simply the Advanceable Counterclaims. (*See* Watkins Aff. ¶¶ 4–5 (referring to the "substantial amount of work" performed in "defending Gray against Defendants' *seven* counterclaims" (emphasis added)).) On the basis of Gray's counsel's sworn statement, the Court cannot determine the amount of fees incurred in defending against those counterclaims for which Gray has a right to advancement.

97. Regardless, Gray has submitted no evidence showing that he has been unable to pay these fees as they became and become due. Gray asserts only that paying the fees in the absence of advancement "has greatly strained [his] family's financial resources and imposed incalculable stress on [his] family." (Gray Aff. ¶ 6.)

98. As to future expenses Gray will incur in this action and the Arbitration, he avers that he does "not have available funds or the financial ability to pay those fees" [REDACTED]. (Gray Aff. ¶¶ 11, 15.) Gray also asserts that YCI's failure to advance fees "has impacted [his] trial strategy, such as by preventing [him] from taking a more aggressive approach toward the use of more costly expert witnesses." (Gray Aff. ¶ 16.)

99. The Court does not believe that the record evidence clearly establishes that Gray will suffer immediate, pressing, irreparable harm in the absence of an injunction ordering advancement. Although Gray asserts that, absent advancement, he will be unable to afford his legal fees going forward unless he were to liquidate certain assets, he provides no evidence that options short of liquidation are unavailable to him. For instance, he does not state that he is unable to obtain loans or borrow against any of his illiquid assets to pay his legal fees as they become due.

100. Additionally, the Court concludes that Gray has not clearly shown that failure to receive advancement has impacted his litigation strategy. At no point does he assert that his counsel have threatened to withdraw if YCI does not advance his attorneys' fees. On the contrary, the evidence of record shows that Gray, through his counsel, has vigorously defended against the Advanceable Counterclaims for nearly a year, including in the Arbitration in which those claims will be decided. Indeed, the only evidence before the Court that Gray's litigation strategy has been impacted due to YCI's denial of advancement, even if believed, is Gray's non-specific statement that he has not been able to take a more aggressive approach with expert witnesses.

(Gray Aff. ¶ 16.) Crucially, Gray does not allege that any expert witnesses are necessary for his defense of the Advanceable Counterclaims, as opposed to the prosecution of his own claims in this action or the Arbitration. Nor does he explain how a "more aggressive" (and apparently expensive) approach toward experts would materially improve his chances of success in defending the Advanceable Counterclaims. Finally, on this point, Gray similarly fails to identify who the "more costly expert witnesses" are, the claims on which they would testify, and how this testimony might improve Gray's chances of ultimate success in defense of the Advanceable Counterclaims. (Gray Aff. ¶ 16.) The Court, therefore, cannot conclude, on this record, that denying his request for advancement would actually impact his defense of the claims for which he is entitled to advancement.

101. Therefore, Gray has not clearly established that the harm he will suffer absent the relief he seeks, if any, is immediate, pressing and irreparable. *See Auto. Dealer Res.*, 15 N.C. App. at 639, 190 S.E.2d at 732. Accordingly, the Court, in its discretion, concludes that Gray has not made the requisite showing required for the issuance of a preliminary mandatory injunction. *See A.E.P. Indus.*, 308 N.C. at 401, 302 S.E.2d at 759–60 (requiring a showing of both likelihood of success on the merits and irreparable harm for the issuance of a preliminary injunction); *Auto. Dealer Res.*, 15 N.C. App. at 639, 190 S.E.2d at 732 (holding that the movant's burden is greater where the injunctive relief sought is mandatory). As a result, the Court concludes that the Motion must be denied.

### III.    CONCLUSION

102.    **THEREFORE**, for the reasons set forth above, the Court, in the exercise of its discretion, hereby **DENIES** the Motion.

**SO ORDERED**, this the 15th day of November, 2018.


/s/ Michael L. Robinson
_____
Michael L. Robinson
Special Superior Court Judge
  for Complex Business Cases